**In re Arlin Joe MUELLER, Debtor.**

**Arlin Joe MUELLER, Appellant,**

**v.**

**Christopher J. REDMOND, Trustee, Appellee,**

**International Association of Machinists, District Lodge No. 70; and American Society of Chartered Life Underwriters and Chartered Financial Consultants, Wichita, Kansas Chapter, Amici Curiae.**

**No. 87–1506.**

United States Court of Appeals, Tenth Circuit.

Feb. 6, 1989.

---

**2.** If a defendant fails to appear in response to a summons, an arrest warrant shall issue. *See* Fed.R.Crim.P. 9(a).

Donald B. Clark, Wichita, Kan., for appellant.

Christopher J. Redmond (Martin R. Ufford with him on the brief) of Redmond, Redmond, O'Brien & Nazar, Wichita, Kan., for appellee.

Ernest McRae of McRae & Early, Wichita, Kan., for amici curiae.

Before SEYMOUR, MOORE and EBEL, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

This is an appeal from an order of the United States District Court for the District of Kansas affirming a judgment of the bankruptcy court denying the debtor a personal exemption for the value of a life insurance policy the debtor purchased immediately prior to filing his bankruptcy petition. 71 B.R. 165. After examining the circumstances, the bankruptcy court concluded the debtor purchased the policy to defraud his creditors; consequently, the court disallowed the claimed exemption.

We agree with the analysis applied by both the bankruptcy and district courts and affirm.

Debtor is a divorced father of one child who was eleven years old at the time of the transactions pertinent to this case. In late 1985 or early 1986, debtor consulted counsel about the possibility of filing a petition in bankruptcy. Then, in January 1986, debtor decided to obtain life insurance to complement coverage in the amount of $100,000 he already owned. Although debtor claimed the new policy was to provide for his daughter's education, the existing policies were unencumbered, and they named his daughter as sole beneficiary. From assets not subject to exemption, the debtor fully paid the new policy's single premium of $7,500. This payment left the debtor insolvent and without non-exempt assets. Three days after purchasing the new policy, the debtor signed the papers necessary for the filing of his bankruptcy petition.

Prior to 1984, the Kansas personal exemption statute provided a blanket exemption for the nonforfeiture value of life insurance purchased before bankruptcy. The only exception to the exemption was judicially created. Kansas courts refused to exempt property from a creditor's claim if that creditor could show he had a "peculiar equity" in the non-exempt assets used to acquire the property. This peculiar equity arose when the debtor obtained the non-exempt property by fraud or when that property was subject to a lien. *Metz v. Williams*, 149 Kan. 647, 88 P.2d 1093, 1096 (1939).

In 1984, the Kansas legislature amended the personal exemptions statute. Under the amended statute the nonforfeiture value of life insurance *is not* exempt from:

Claims of the creditors of a policyholder who files a bankruptcy petition under 11 U.S.C. § 101 et seq. on or within one year after the date the policy is issued if the policy was obtained by the debtor for the purpose of defrauding one or more of the debtor's creditors.

Kan.Stat.Ann. § 40–414(b)(1) (1984). Debtor claims this amendment did not alter the law on personal exemptions for life insurance in any way. He suggests the legislature merely intended to explicitly ratify the "peculiar equity" doctrine as it had been applied by the Kansas courts. Since both parties agree no creditor had a peculiar equity in the assets the debtor used to purchase the life insurance, the debtor argues the insurance is exempt. We disagree.

It is axiomatic that when a legislature amends prior law it is presumed the legislature intended to make a change in the meaning and effect of the law. *State v. Dubish*, 234 Kan. 708, 675 P.2d 877, 883 (1984). Of equal significance is the presumption that a legislature does not intend to enact useless or meaningless statutes. *City of Olathe v. Board of Zoning Appeals*, 10 Kan.App.2d 218, 696 P.2d 409, 413 (1985).

These principles make clear that the Kansas legislature intended to change a debtor's right to exempt from the bankruptcy estate the nonforfeiture value of life insurance policies. It did so in unequivocal language which both the bankruptcy and district courts correctly applied to this case.[1] It is equally clear that since the amendment of § 40–414(b)(1), the "peculiar equity" doctrine does not apply to insurance policies purchased by bankruptcy debtors within one year of filing a bankruptcy petition.

The debtor alternatively argues that the bankruptcy court erred in holding he purchased the policy with intent to defraud. Again, we disagree.

In disposing of this issue, the district court correctly relied upon the test for determining the existence of fraud expressed in *In re Mehrer*, 2 B.R. 309, 312 (Bankr.E.D.Wash.1980). *Mehrer* holds that whether a prebankruptcy transaction which converts non-exempt property into life insurance constitutes a fraud can be gauged by considering so-called "badges of fraud."[2]

In this case, the bankruptcy court found the badges of fraud were: (1) the debtor was insolvent when he purchased the policy; (2) the policy was purchased one week prior to the filing of his petition in bankruptcy; (3) the debtor used his last non-exempt assets to make the acquisition; (4) the debtor had two other unencumbered life insurance policies; (5) although the debtor contended he purchased the last policy to provide for his daughter's education, the named beneficiaries are the "then living children of the insured, and the then living children of any child of the insured who is not then living, per stirpes." Judging these findings by the clearly erroneous standard, as we must, *Haskins v. United States*, 846 F.2d 55, 56 (10th Cir.1988), we find no error.

AFFIRMED.

---

1. Indeed, if the Kansas legislature meant to ratify the "peculiar equity" doctrine, they could have easily done so by incorporating into the amendment the terminology repeatedly used by the courts.

2. Kansas courts have employed "badges of fraud" to determine fraud in other circumstances. *See City of Arkansas City v. Anderson*, 243 Kan. 627, 762 P.2d 183, 187 (1988).