**In re Stephen J. LUDWIG and Melody Ann Ludwig, Debtors.**

**No. 05–27847–HRT.**

United States Bankruptcy Court, D. Colorado.

May 11, 2006.

**312**

Terry J. Ploski, Golden, CO, for Debtors.

### ORDER DENYING DEBTOR'S CLAIM OF EXEMPTION

HOWARD R. TALLMAN, Bankruptcy Judge.

THIS MATTER comes before the Court on the Chapter 7 Trustee's Objection to Debtors' Claim of Exempt Property and Supplement to Objection to Debtors' Claims of Exempt Property. The Court has reviewed the facts and arguments presented by the parties, as well as the pertinent legal authority, and hereby makes the following findings of fact and conclusions of law.

### JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(a) and (b) and 28 U.S.C. § 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), as it involves an objection to a claimed exemption.

### BACKGROUND

Debtors Stephen J. Ludwig ("Debtor") and Melody Ann Ludwig filed for Chapter 7 bankruptcy on July 19, 2005. The Chapter 7 Trustee, Glen R. Anstine, Esq., filed Trustee's Objection to Debtors' Claim of Exempt Property on September 21, 2005, and Trustee's Supplement to Objection to Debtors' Claims of Exempt Property on March 23, 2006.

A hearing was held on April 5, 2006. Testimony and evidence presented at trial were as follows:

Debtor testified that, in the months prior to filing for bankruptcy, he used assets from a brokerage account to purchase an educational IRA for his children and to make improvements to his family home.

On July 15, 2005, Debtor used the remaining assets in the brokerage account to purchase a U.S. Allianz High Five Variable Annuity (the "Allianz Annuity") in the amount of $33,000.00. The Contract Profile for the Allianz Annuity ("Allianz Annuity Contract") was admitted into evidence at trial. A Prospectus for the Allianz Annuity was also admitted.

Debtor testified that he has a professional background in finance and performed financial services in his previous employment with Montgomery Ward & Co. While there, he participated in a stock purchase program, and purchased shares of Mobil Corporation stock (now the Exxon–Mobil Corporation). At trial, Debtor offered no testimony or documentary evidence explaining the employee stock pur-

chase program or indicating whether the program was ERISA-qualified.[1]

On cross-examination, Debtor testified that after leaving Montgomery Ward, he placed the assets from this stock ownership program in a brokerage account with Merrill Lynch in Debtor's name. The brokerage account consisted primarily of Exxon–Mobil stock, which the Debtor eventually sold. Debtor later purchased the Allianz Annuity with proceeds from this brokerage account. Debtor did not offer evidence as to whether the change from the stock purchase program to the brokerage account involved a "roll over" of funds.

By stipulation of the parties, the Court admitted into evidence a letter dated October 3, 2005, from Debtor's financial advisor, Todd A. Dussex, CFP, of LPL Financial Services. Debtor testified that he sought financial advice from Mr. Dussex prior to filing bankruptcy. The letter is written in response to an inquiry from Debtor after filing bankruptcy. The letter states that Debtor was under the impression that his Montgomery Ward stock purchase program was an ERISA-qualified plan. Mr. Dussex informed Debtor that the stock program and the assets in the brokerage account were non-qualified funds and could not be directly rolled over into a qualified plan. He also informed Debtor that the Allianz Annuity created an environment that was "similar to" and "closely matched" an ERISA-qualified plan, but that the Allianz Annuity was not itself an ERISA-qualified plan or qualified for special treatment under the Internal Revenue Code.

Debtor did not disclose the brokerage account or the liquidation of the Montgomery Ward stock purchase program among his Closed Financial Accounts in the Statement of Financial Affairs of his Chapter 7 Petition. Debtor did disclose ownership of the Allianz Annuity in his original Schedules B and C. The original Schedule C claimed an exemption for the Allianz Annuity pursuant to Colo.Rev.Stat. § 10–7–106. Debtor eventually amended his Schedules B and C to reflect the purchase of the Allianz Annuity, and revised Schedule C to claim an exemption pursuant to Colo.Rev.Stat. § 13–54–102(1)(s). The Amended Schedules B and C were admitted into evidence.

At trial, Debtor and the Chapter 7 Trustee did not pursue the argument that the Allianz Annuity was exempt under Colo. Rev.Stat. § 10–7–106, which generally prohibits the alienation of proceeds from an annuity contract, or an account of any beneficiary other than the insured. Therefore, the Court will not address this issue.

The issue before the Court is whether the Allianz Annuity is exempt from the bankruptcy estate. Because the State of Colorado has opted out of federal exemption statutes, the applicable law is Colorado's exemption statute, Colo.Rev.Stat. § 13–54–102.

Debtor concedes that the Allianz Annuity is not an ERISA-qualified plan and is not exempt on this basis. Instead, he argues:

(1) The Allianz Annuity is an "individual retirement account" as defined by the Internal Revenue Code ("I.R.C."), 26 U.S.C. § 408(a), and is therefore qualifies for Colorado's specific exemption for

---

1. The Court notes that a Prospectus for the "Montgomery Ward & Co., Inc. Savings and Stock Ownership Plan," dated April 19, 1984, was attached as an exhibit to Debtor's Objection to Trustee's Motion to Compel Turnover

of Property of the Estate, entered January 31, 2006. This document was not offered as an exhibit at trial nor included in the parties' agreement for the admission of exhibits and so the Court has not considered its contents.

an "individual retirement account, as defined in 26 U.S.C. sec. 408." *See* Colo. Rev.Stat. § 13–54–102(1)(s).

(2) Even if the Allianz Annuity does not qualify as an "individual retirement account," Colo.Rev.Stat. § 13–54–102(1)(s) also recognizes a broad exemption for "retirement plans." Because Debtor intended to use the Allianz Annuity for his retirement, it qualifies for an exemption as a "retirement plan."

The Chapter 7 Trustee argues:

(1) The Allianz Annuity is not an "individual retirement account" as defined by I.R.C. § 408(a) and, therefore, is not exempt under Colo.Rev. Stat. § 13–54–102(1)(s).

(2) The term "retirement plan" as it appears in Colo.Rev.Stat. § 13–54–102(1)(s) cannot be interpreted so broadly as to include the Allianz Annuity contract.

(3) Debtor's subjective intent has no bearing on whether the Allianz Annuity falls under the exemptions listed in Colo.Rev.Stat. § 13–54–102(1)(s).

## DISCUSSION

### I. COLORADO'S EXEMPTION STATUTE

The ultimate question is whether the Allianz Annuity is exempt under Colorado's exemption statute, Colo.Rev.Stat. § 13–54–102(1). At the outset, the Court observes that § 13–54–102(1)(s) incorporates the definitions set forth in I.R.C. § 408. The Colorado statute states in relevant part:

(1) The following property is exempt from levy and sale under writ of attachment or writ of execution:

. . .

(s) Property, including funds, held in or payable from any pension or *retire-*

*ment plan* or deferred compensation plan, including those in which the debtor has received benefits or payments, has the present right to receive benefits or payments, or has the right to receive benefits or payments in the future and including pensions or plans which qualify under the federal "Employee Retirement Income Security Act of 1974" as an employee pension benefit plan, as defined in 29 U.S.C. sec. 1002, *any individual retirement account, as defined in 26 U.S.C. sec. 408*, any Roth individual retirement account, as defined in 26 U.S.C. sec. 408A, and any plan, as defined in 26 U.S.C. sec. 401, and as these plans may be amended from time to time . . . .

Colo.Rev.Stat. § 13–54–102(1)(s) (2005) (emphasis added).

The Court's analysis is threefold. First, it will determine whether the Allianz Annuity is exempt as an "individual retirement account" under I.R.C. § 408(a). Second, although Debtor did not raise this argument, the Court will also examine whether the Allianz Annuity qualifies as an "individual retirement annuity" under I.R.C. § 408(b). *See* Colo.Rev.Stat. § 13–54–102(1)(s) (referring broadly to "any individual retirement account, as defined in 26 U.S.C. sec. 408"). Third, the Court will address Debtor's argument that § 13–54–102(1)(s) provides a broad exemption for "retirement plans" and that the Allianz Plan qualifies as one such "retirement plan."

The Court appreciates the zealous advocacy of Debtor's counsel and his substantive research on particularly difficult questions of law. However, Debtor's arguments hinge on assumptions that are not supported by statute or case law, as discussed below.

## II. *"INDIVIDUAL RETIREMENT ACCOUNTS" UNDER I.R.C. § 408(a)*

■ The I.R.C. § 408(a), defines "individual retirement account" as:

(a) Individual retirement account.—For purposes of this section, the term "individual retirement account" means a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries, but only if the written governing instrument creating the trust meets the following requirements:

(1) Except in the case of a rollover contribution described in subsection (d)(3), in section 402(c), 403(a)(4), 403(b)(8), and 457(e)(16), no contribution will be accepted unless it is in cash, and contributions will not be accepted for the taxable year on behalf of any individual in excess of the amount in effect for such taxable year under section 219(b)(1)(A).

(2) The trustee is a bank (as defined in subsection (n)) or such other person who demonstrates to the satisfaction of the Secretary [of the Treasury] that the manner in which such other person will administer the trust will be consistent with the requirements of this section.

(3) No part of the trust funds will be invested in life insurance contracts.

(4) The interest of an individual in the balance in his account is nonforfeitable.

(5) The assets of the trust will not be commingled with other property except in a common trust fund or common investment fund.

(6) Under regulations prescribed by the Secretary, rules similar to the rules of section 401(a)(9) and the incidental death benefit requirements of section 401(a) shall apply to the distribution of the entire interest of an individual for whose benefit the trust is maintained.

26 U.S.C. § 408(a).

In this case, it is clear that the Allianz Annuity does not meet the definition of an "individual retirement account." Among other factors, (1) the lump sum premium for the Allianz Annuity was $33,000.00, an amount exceeding the statutory limit of $4,000 for the 2005–2007 taxable years as set by 26 U.S.C. §§ 219(b)(1)(A) and 219(b)(5)(A); and (2) the Allianz Annuity is in Debtor's name and is not entrusted to a bank or other trustee. The Court therefore holds that the Allianz Annuity is not exempt under Colo.Rev.Stat. § 13–54–102(1)(s) as an "individual retirement account."

## III. *"INDIVIDUAL RETIREMENT ANNUITIES" UNDER I.R.C. § 408(b)*

■ Though Debtor did not raise the argument, the Court will also examine whether the Allianz Annuity qualifies as an "individual retirement annuity" under the I.R.C. § 408(b), insofar as Colo.Rev.Stat. § 13–54–102(1)(s) refers generally to individual retirement accounts "as defined in 26 U.S.C. sec. 408" and does not restrict the exemption to specific subsections of I.R.C. § 408.

### A. Definition of "Individual Retirement Annuity"

The I.R.C. definition of "individual retirement annuity" parallels the definition of "individual retirement account," and states as follows:

(b) Individual retirement annuity.—For purposes of this section, the term "individual retirement annuity" means an annuity contract, or an endowment contract (as determined under regulations

prescribed by the Secretary [of the Treasury]), issued by an insurance company which meets the following requirements:

(1) The contract is not transferable by the owner.

(2) Under the contract—

(A) the premiums are not fixed,

(B) the annual premium on behalf of any individual will not exceed the dollar amount in effect under section 219(b)(1)(A), and

(C) any refund of premiums will be applied before the close of the calendar year following the year of the refund toward the payment of future premiums or the purchase of additional benefits.

(3) Under regulations prescribed by the Secretary [of the Treasury], rules similar to the rules of section 401(a)(9) and the incidental death benefit requirements of section 401(a) shall apply to the distribution of the entire interest of the owner.

(4) The entire interest of the owner is nonforfeitable.

Such term does not include such an annuity contract for any taxable year of the owner in which it is disqualified on the application of subsection (e) or for any subsequent taxable year. For purposes of this subsection, no contract shall be treated as an endowment contract if it matures later than the taxable year in which the individual in whose name such contract is purchased attains age 70 1/2; if it is not for the exclusive benefit of the individual in whose name it is purchased or his beneficiaries; or if the aggregate annual premiums under all such contracts purchased in the name of such individual for any taxable year

exceed the dollar amount in effect under section 219(b)(1)(A).

See 26 U.S.C. § 408(b).

## B. Terms of the Allianz Annuity Contract

As a threshold requirement, an individual retirement annuity may not be "transferable" by one owner to another. *See* 26 U.S.C. § 408(b)(1). The Court has reviewed the Allianz Annuity Contract and Prospectus. The Court notes that, in contrast to § 408(b), the Contract uses the term "transfer" to refer to the Debtor's ability to "transfer all or part of his annuity into another investment option," Allianz Annuity Contract at 8, rather than to a transfer in ownership. Even so, the Contract clearly permits Debtor to "change ownership" or "assign" his rights to another party. Allianz Annuity Contract at 12–13. The Contract states in relevant part:

### CONTRACT OWNER, ANNUITANT, ASSIGNMENT PROVISIONS

**CONTRACT OWNER:** As the Contract Owner, you have all the interest and rights under this Contract. The Contract Owner is the person designated as such on the Issue Date, unless changed. *You may change owners of the Contract at any time* by Authorized Request subject to our underwriting rules then in effect.

. . .

**ASSIGNMENT OF A CONTRACT:** An Authorized Request specifying the terms of an assignment of a Contract must be provided to the Service Center. We will not be liable for any payment made or action taken before we record the assignment … If the Contract is assigned, your rights may only be exercised with the consent of the assignee of record.

Allianz Annuity Contract at 12–13 (emphasis added).

The Court finds the contractual language dispositive. Because the Contract grants Debtor the explicit right to "change owners" of the Allianz Annuity or "assign" it to another party, the Court finds that the Allianz Annuity does not meet the non-transferability requirement for an individual retirement annuity under I.R.C. § 408(b)(1).

The Allianz Annuity also fails to meet the requirements of I.R.C. § 408(b)(2), which limits premium payments to the amounts set forth in 26 U.S.C. §§ 219(b)(1)(A) and (5)(A). *See* 26 U.S.C. § 408(b)(2)(B). As noted previously, the lump sum payment of $33,000.00 exceeds the statutory limit of $4,000 set for the 2005–2007 taxable years. *See* 26 U.S.C. §§ 219(b)(1)(A)-(5)(A). *See also In re Rogers,* 222 B.R. 348, 351 (Bankr.S.D.Cal. 1998) (holding that lump sum premium payment for debtor's annuity contract "far exceeded" former $2,000 limit under a previous version I.R.C. § 408(b)(2)(B)).

The Court therefore holds that the Allianz Annuity is not exempt under Colo. Rev.Stat. § 13–54–102(1)(s) as an "individual retirement annuity."

### C. Debtor's Authorities are Inapposite

The authorities cited by the Debtor are inapposite because they involve assets that are unquestionably "individual retirement accounts" or "individual retirement annuities" as defined by the I.R.C. In particular, Debtor concentrates on the Texas bankruptcy case, *In re Laxson,* 102 B.R. 85 (Bankr.N.D.Tex.1989). The central issue in *In re Laxson* was whether a Chapter 7 debtor could claim an individual retirement account as exempt property under the Texas Property Code, Tex. Prop.Code § 42.0021 (Vernon 1989 Supp.), or whether the Texas exemption was preempted by ERISA. *In re Laxson* is inapposite because there appears to have been no question that the assets in that case were individual retirement accounts as defined by I.R.C. § 408(a). *Id.* at 85–86. In contrast, the status of Debtor's annuity is precisely what is at issue in this case.

Moreover, *In re Laxson* and many of the cited authorities were decided in the late 1980s at a time when the relation between state IRA exemption statutes and ERISA was in doubt. In fact, the central holding in *Laxson* was that ERISA did not preempt a Texas statutory exemption for IRAs. *Id.* at 89. The United States Supreme Court clarified the relationship between ERISA and IRAs in *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) (holding that ERISA-qualified pension plans, as well as IRAs created pursuant to 26 U.S.C. § 408, may be excluded from the property of the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2)). In light of the *Shumate* decision, Debtor's authorities are no longer relevant.

On the issue of whether the Allianz Annuity is exempt under § 13–54–102(1)(s) by virtue of being qualified under I.R.C. §§ 408(a) or 408(b), the Court finds the reasoning in *In re Huebner,* 986 F.2d 1222 (8th Cir.1993) and *In re Moss,* 143 B.R. 465 (Bankr.W.D.Mich.1992) persuasive. Although *In re Huebner* and *In re Moss* dealt with Iowa and Michigan exemption statutes, respectively, and concerned slightly different definitions of "individual retirement annuity," the observations made in these cases are relevant to this case. Like the debtor in *In re Huebner,* the Debtor "could have invested his savings in retirement annuities that prevented him from withdrawing funds prior to his reaching retirement age"; instead, he deposited funds into his individual brokerage

account and purchased an Allianz Annuity which placed "virtually no restrictions on his right to withdraw." *See In re Huebner*, 986 F.2d at 1225. Even though Debtor may incur penalties for early withdrawals from the Allianz Annuity, Debtor is not prohibited from doing so. *See In re Moss*, 143 B.R. at 467. Moreover, the Debtor is free to "change owners" or "assign" the Allianz Annuity at any time. Allianz Annuity Contract at 12–13. In effect, the Allianz Annuity is no different from a "bank savings account" held by the Debtor that could be used for any purpose, and not necessarily for retirement. *Id.* Such investment devices are not exempt under Colorado law. *See* Colo.Rev.Stat. § 13–54–102(1)(s).

## IV. "RETIREMENT PLAN" UNDER COLO. REV. STAT. § 13–54–102(1)(s)

■ Debtor's remaining argument is that § 13–54–102(1)(s) contains a broad exemption for "retirement plans" and that the Allianz Annuity qualifies as a "retirement plan" because the Debtor intended to use the annuity for his retirement. This argument is unavailing.

### A. Definition of "Retirement Plan"

The term "retirement plan" appears in the phrase "any pension or *retirement plan* or deferred compensation plan" in the first clause of § 13–54–102(1)(s). *Id.* (emphasis added). Colorado courts have yet to interpret the meaning of "retirement plan." The Court has found only two Colorado cases that mention § 13–54–102(1)(s), and both cases held that its provisions were inapplicable because the parties filed their actions before the effective date of the legislative amendment enacting § 13–54–102(1)(s). *See In re Marriage of LeBlanc*, 944 P.2d 686, 687 (Colo.App.1997) (exemption under § 13–54–102(1)(s) did

not apply to action filed prior to effective date of May 1, 1991); *In re Marriage of Plank*, 881 P.2d 486, 487 (Colo.App.1994) (same). *See also Guidry v. Sheet Metal Workers Int'l Ass'n, Local No. 9*, 39 F.3d 1078, 1085 (10th Cir.1994) (same); *Guidry v. Sheet Metal Workers Int'l Ass'n, Local No. 9*, 10 F.3d 700, 714 (10th Cir.1993) (same); *In re Cohen*, 246 B.R. 658, 666 (Bankr.D.Colo.2000) (citing § 13–54–102(1)(s) for the general proposition that "retirement and pension plans are [considered] favored and exempt assets, not part of a debtor's estate").

■ Because the Court is called upon to interpret a Colorado statute, the Court will apply the canons of statutory construction recognized by Colorado courts. Under the canon of *noscitur a sociis*, the Court looks for common characteristics among the specific items listed in § 13–54–102(1)(s). *See Bedford v. Johnson*, 102 Colo. 203, 78 P.2d 373, 376–77 (1938) (under doctrine of *noscitur a sociis*, the meaning of a doubtful word in a statute may be ascertained by reference to the meaning of associated words appearing in the statute). Under the canon of *ejusdem generis*, the Court reads general terms in light of the specific terms in § 13–54–102(1)(s). *See Winter v. State of Colorado*, 126 P.3d 192, 195 (Colo.2006) (under the doctrine of *ejusdem generis*, "the general terms are applied only to those things of the same general kind or class as those specifically mentioned").

Applying the canon of *noscitur a sociis*, the Court observes that the examples listed in § 13–54–102(1)(s) share the common feature of being either ERISA-qualified, like a company pension, or tax-qualified, like an individual retirement annuity as defined under 26 U.S.C. § 408(b). *See Bedford*, 78 P.2d at 376. Applying the canon of *ejusdem generis*, the Court interprets the generic term "retirement plan"

as meaning those plans similar to the specific examples listed in § 13–54–102(1)(s). *See Winter,* 126 P.3d at 195. The examples listed in § 13–54–102(1)(s) may not be an exclusive list of permissible exempt retirement arrangements. However, the Court concludes that the Colorado legislature must have intended to limit the exemptions in § 13–54–102(1)(s) to those plans that possess attributes similar to the listed items.

The Court's interpretation is supported by the legislative history of § 13–54–102(1)(s). The Colorado General Assembly added § 13–54–102(1)(s) to existing exemptions by amendments enacted in 1991. *See* Laws 1991, H.B. 91–1233 §§ 1, 2, eff. May 1, 1991. The section was amended again in 2002, inserting the phrase "any Roth individual retirement account, as defined in 26 U.S.C. sec. 408A." *See* Laws 2002, Ch. 154 § 1, eff. May 24, 2002.

The 2002 amendment is significant. The Colorado General Assembly may be presumed to have known that other states have general exemptions for all annuity contracts (Florida is one example, as discussed below). Although the Colorado General Assembly had the opportunity to expand § 13–54–102(1)(s) to exempt all annuities, it merely extended the list of exemptions to include Roth IRAs. Roth IRAs, like the other items listed in § 13–54–102(1)(s), share the feature of being tax-qualified.

The Court finds that the Allianz Annuity is neither an ERISA-qualified plan nor a tax-qualified IRA, and does not share the characteristics of the exempt plans listed in § 13–54–102(1)(s). *See Winter,* 126 P.3d at 195; *Bedford,* 78 P.2d at 376. The Court therefore holds that the Allianz Annuity is not exempt under § 13–54–102(1)(s) as a "retirement plan."

**B. Debtor's Authorities Are Inapposite**

In support of his interpretation of § 13–54–102(1)(s), Debtor cites exemption statutes from Florida, Texas, and Oklahoma. *See* Fla. Stat. Ann. § 22.14 (2006); Texas. Prop.Code § 42.0021 (2005); 36 Okla. Stat. § 4029 (2005). The Court is not persuaded. The language of the Florida, Texas and Oklahoma statutes cited differ significantly from § 13–54–102(1)(s). Specifically, the Florida statute contains a specific exemption for proceeds of "annuity contracts." *See* Fla. Stat. Ann. § 222.14 (2006). That exemption for "annuity contracts" has been construed broadly to include *all* annuity contracts. *See, e.g., In re Solomon,* 95 F.3d 1076, 1078–79 (11th Cir. 1996) (observing that Fla. Stat. Ann. § 222.14 applies to "all annuity contracts"). By contrast, Colorado's exemption statute lacks a broad exemption for "annuity contracts."

**C. Colorado's "Liberal Exemption Laws"**

■ Debtor also asks the Court to take note of Colorado's "liberal exemption laws" and cites *In re Larson,* 260 B.R. 174 (Bankr.D.Colo.2001) in support of this proposition. *In re Larson* does not shoulder the weight Debtor places on it. Colorado's exemption laws are not so liberal that they allow the Court to read new exemptions into § 13–54–102(1)(s). Neither *In re Larson* nor any other authority cited by Debtor supports the proposition that this Court may read new language into a Colorado statute that the Colorado legislature did not see fit to include.

**D. Debtor's Intent is Irrelevant**

■ Debtor asserts that he intended to use the Allianz Annuity for his retirement, and therefore, it qualifies as a "retirement plan" under § 13–54–102(1)(s). At trial,

Debtor pointed to various portions of the Allianz Annuity Contract and Prospectus that referred to the annuity contract as a "retirement investment." In effect, Debtor argues that an asset may be exempt under § 13–54–102(1)(s) if a debtor *subjectively intends* the asset to be used for retirement purposes—whether that asset is an annuity, a personal savings account, or other investment vehicle. This interpretation would have the unintended result of undermining the Colorado General Assembly's apparent purpose in restricting exemptions to the kinds of retirement vehicles listed in § 13–54–102(1)(s). The Court rejects the Debtor's "subjective intent" argument. *See In re Ellis*, 274 B.R. 782, 788 (Bankr.S.D.Ill.2002) (holding that annuity for payment of lottery proceeds was not exempt under 26 U.S.C. § 408(b) merely because "in her mind" debtor entered into annuity "for purposes of retirement"); *In re Rogers, supra.,* at 351 (noting that California exemption statute "does not extend to protect anything a debtor unilaterally chooses to claim as intended for retirement purposes").

## V. BADGES OF FRAUD

■ Even if the Allianz Annuity is qualified under the I.R.C. definition of Individual Retirement Annuity or the Colorado exemption statute, the Court finds that there exist in these facts certain "badges of fraud" suggesting Debtor purchased the Allianz Annuity in an attempt to remove assets from his estate that would generally be available for distribution to his creditors.

### A. Badges of Fraud—Legal Standard

In *Taylor v. Rupp (In re Taylor)*, 133 F.3d 1336, 1338–39 (10th Cir.1998), the Tenth Circuit held that bankruptcy courts may consider "badges of fraud" when determining whether transfers and purchases by a debtor prior to bankruptcy are fraudulent under 11 U.S.C. § 548(a)(1). The Tenth Circuit effectively adopted the badges of fraud recognized in the Uniform Fraudulent Transfer Act ("UFTA"), which also had been adopted by the Kansas legislature. *Id.* Significantly, Colorado also has adopted the UFTA and the badges of fraud listed therein. *See* Colo.Rev.Stat. § 38–8–105(2) (2005).

The Tenth Circuit applied a similar badges of fraud analysis to pre-bankruptcy planning in *Mueller v. Redmond (In re Mueller)*, 867 F.2d 568 (10th Cir.1989). After consulting an attorney about the possibility of bankruptcy, the debtor in *In re Mueller* purchased a life insurance policy in the amount of $100,000 immediately prior to filing his bankruptcy petition. The debtor paid the policy's single premium with non-exempt funds. The Tenth Circuit affirmed the bankruptcy court's finding of fraud where: (1) the debtor was insolvent when he purchased life insurance policy; (2) the policy was purchased one week prior to filing bankruptcy petition; (3) the debtor used his last non-exempt assets to make the purchase; (4) the debtor had two other unencumbered life insurance policies; (5) the debtor misrepresented that the policy was to benefit his daughter's education. *Id.* at 570.

The Court concludes that the badges of fraud in fraudulent transfer cases and pre-bankruptcy planning cases are substantially equivalent for the purposes of the analysis here. Therefore, the Court will apply the badges of fraud as set forth in *In re Taylor, In re Mueller*, and UFTA to the pre-bankruptcy conduct in this case.

### B. Badges of Fraud in Annuity Cases

At the outset, the Court recognizes that a number of courts in other jurisdictions have applied the badges of fraud when

reviewing the purchase of annuities or life insurance policies immediately prior to bankruptcy filing.

As mentioned above, the Court has reviewed the Tenth Circuit's opinion in *In re Mueller*, which involved the purchase of a life insurance policy. *See In re Mueller*, 867 F.2d at 570. The Court also reviewed *In re Jennings*, 332 B.R. 465 (Bankr. M.D.Fla.2005), a Florida bankruptcy case involving a debtor who purchased a retirement annuity from Allianz shortly before filing for bankruptcy. The court in *In re Jennings* did not indicate whether the annuity was ERISA-qualified or was purchased with funds rolled over from an ERISA-qualified plan. However, the court did note that the debtor retained control over the money used to fund the annuity. *Id.* at 470. Applying Florida's fraudulent conveyance statute, *see* Fla. Stat. Ann. §§ 222.30, 726.10, the court held that the purchase of the annuity on the eve of bankruptcy, debtor's control over 90% of the money used to purchase the annuity, and the fact that debtor had never previously set aside money for retirement indicated an intent to defraud creditors. *Id.* at 471–72. The Court observes that the Florida statutes specifically list "annuity contracts" as an exemption, *see* Fla. Stat. Ann. § 222.14, which makes the finding of fraud in cases such as *In re Jennings* all the more significant in disapproving such pre-bankruptcy planning techniques.

### C. Badges of Fraud Applied to Debtor's Case

The badges of fraud listed in *In re Taylor*, *In re Mueller* and UFTA are non-exclusive. The badges of fraud in this case include the following:

### 1. Purchase on Eve of Bankruptcy

Debtor purchased the Allianz Annuity on July 15, 2005. He filed for Chapter 7 bankruptcy four days later on July 19, 2005. The timing of Debtor's purchase is significant. Like the debtors in *In re Mueller* and *In re Jennings*, his purchase of the Allianz Annuity on the eve of bankruptcy suggests he had an intent to keep his assets from creditors. *See In re Mueller*, 867 F.2d at 569 (debtor purchased life insurance policy three days prior to filing bankruptcy petition); *In re Jennings*, 332 B.R. at 472 (debtor's purchase of annuity from Allianz Insurance Co. rather than IRA or 401(K) Plan and "sudden interest in retirement options" nine days before filing bankruptcy indicated an intent to keep assets from creditors). *See also In re Taylor*, 133 F.3d at 1339 (debtor transferred interest in Jeep to wife seventeen days before filing for bankruptcy).

### 2. Disposed of Last Non–Exempt Assets

Like the debtor in *In re Mueller*, Debtor used the last funds in his non-exempt brokerage account (left after the transfers to his children's educational IRAs and home improvements) to purchase the Allianz Annuity. *See, e.g., In re Mueller*, 867 F.2d at 570 (debtor used his last non-exempt assets to purchase life insurance policy).

### 3. Knowledge that Annuity was Not ERISA Qualified

Debtor testified that he knew that the Allianz Annuity was not ERISA-qualified. Further, the letter from his financial advisor, Mr. Dussex, states that the Allianz Annuity was not ERISA-qualified. The Court also notes that Debtor has a background in finance and reasonably may be presumed to know the difference between ERISA-qualified plans, individual retirement accounts that qualify under the I.R.C., and the annuity contract he purchased from Allianz. In light of his knowledge and the circumstances, the Court cannot find credible the Debtor's claim that the Allianz Annuity qualified as an individual retirement account under the

I.R.C. or was protected as a "retirement plan" under Colorado's exemption statute.

### 4. Transfer was to Benefit Insiders

The Allianz Annuity benefits Debtor and his wife, Melody Ann Ludwig, both of whom are insiders. *See, e.g., In re Taylor,* 133 F.3d at 1339 (finding a transfer to be fraudulent where debtor transferred interest in Jeep to wife a few days before filing for bankruptcy).

### 5. Debtor Retained Control of Annuity

Under the terms of his Allianz Annuity Contract and Prospectus, Debtor retains control over the annuity and may "change owners" or "assign" the annuity at any time. *See, e.g., In re Jennings,* 332 B.R. at 470 (debtor retained control over the money used to fund annuity).

### 6. Reliance on Counsel is Not a Defense

Debtor testified that he purchased the Allianz Annuity on the advice of counsel. A similar defense was rejected by a Wyoming bankruptcy court in *Royal v. Baker (In Re Baker),* 273 B.R. 892 (Bankr. D.Wyo.2002). Like Debtor, the debtors in *In re Baker* transferred assets to annuity contracts and later claimed that the transfer had been on the advice of their attorney. *Id.* at 895–96, 898. Acting on the advice of legal counsel is only one factor to be considered when examining badges of fraud. *Id.* at 898. Here, as in *In re Baker,* other evidence of overreaching outweighs this mitigating factor.

## VI. *CONCLUSION*

For the foregoing reasons,

IT IS HEREBY ORDERED that the Objection to the Debtor Stephen Ludwig's claim of exemption filed by the Chapter 7 Trustee is GRANTED.