Argued and submitted October 3, 2008, affirmed May 13, 2009

Janet I. BAILEY,
*Petitioner,*

*v.*

PUBLIC EMPLOYEES RETIREMENT BOARD,
*Respondent.*

Public Employees Retirement Board
050918; A134007

208 P3d 511

Thomas K. Doyle argued the cause for petitioner. With him on the briefs was Bennett, Hartman, Morris & Kaplan, LLP.

Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

Petitioner seeks review of a final order of the Public Employees Retirement Board (PERB) that rejected her claim that she was entitled to receive credit toward retirement benefits for service as a public employee at Oregon Health and Science University (OHSU) for the month of January 2002. Although petitioner was on strike from work at OHSU in January 2002, she contends that she was entitled to receive service credit as an employee for that month because a payment that OHSU was ordered to make to petitioner and other striking employees constituted "salary" under *former* ORS 238.005(20)(b)(C) (2001) that entitled her to that credit.[1] PERB rejected that contention. On review for legal error, ORS 183.482(8)(a), we affirm PERB's decision.

Petitioner was employed as a nurse at OHSU and was a member of the Oregon Nurses Association (ONA) bargaining unit at OHSU. Between December 16, 2001 and February 14, 2002, petitioner and other ONA bargaining unit members at OHSU were on strike. During that period, OHSU paid a "critical need incentive" (CNI) bonus to nurses who crossed picket lines to work. The ONA filed a complaint against OHSU with the Employment Relations Board (ERB), alleging that payment of the CNI was an unfair labor practice in violation of the Public Employee Collective Bargaining Act, ORS 243.672. ERB upheld the complaint and ordered OHSU "to pay the equivalent CNI amount to strikers that it paid to nonstrikers." *Oregon Nurses Association v. Oregon Health & Science University*, 19 PECBR 696 (2002). The CNI remedy pay that ERB ordered OHSU to pay the striking nurses was calculated by taking the total amount of CNI bonuses that OHSU had paid to the nonstriking nurses and dividing it among striking nurses on a pro rata basis. Striking nurses received the ERB-ordered payment only if and when they returned to work at OHSU. The ERB order also specified that "OHSU is not being required to pay for work not performed." *Id*. Petitioner returned to work after the

---

[1] *Former* ORS 238.005(20)(b)(C) (2001) was renumbered in 2005 as ORS 238.005(21)(b)(C). Throughout this opinion, all references to ORS 238.005(20)(b)(C) are to the 2001 version of the statute.

strike and received CNI remedy pay in the amount of $315.74.

Before the strike, petitioner had requested from the Public Employee Retirement System (PERS) an estimate of her retirement benefits from the system. While she was on strike, petitioner received an estimate from PERS that calculated that she would be eligible for retirement benefits in June 2003. After the strike, petitioner requested from PERS another estimate of her retirement benefits, but PERS denied the request because a year had not elapsed since petitioner's first request. Relying on the first PERS estimate and believing that she was eligible for retirement benefits, petitioner retired from OHSU in June 2003. When she did not begin receiving PERS payments 90 days after she had retired, petitioner contacted PERS and learned that PERS believed that she was one month short of the creditable service required for her to receive PERS benefits because she was listed as having been on leave without pay from OHSU for January 2002. Because petitioner worked a major fraction of December 2001 and February 2002, both of those months were counted as creditable service and are not at issue.[2]

Petitioner challenged PERS's determination that she lacked one month creditable service, arguing she had not been on leave in January 2002 but, rather, had been on strike. PERS responded that, although petitioner was not technically on leave during the strike period, the leave designation was simply an administrative means to record the fact that she did not work or receive a salary from OHSU in January 2002 and thus did not have creditable service for that month. Petitioner challenged that decision before PERB, arguing that the ERB-ordered CNI remedy pay constituted salary for January 2002 and, hence, meant that she was entitled to service credit for the month. PERB disagreed with petitioner's argument and concluded that the CNI remedy

---

[2] Subsequently, petitioner returned to OHSU and worked for one month, thereby entitling her to receive retirement benefits. Petitioner has received PERS retirement payments since December 2003. As the parties acknowledge, petitioner's claim is not moot because, if she prevails on review, she will be entitled to PERS payments for June through November 2003.

pay was not "salary." On review, petitioner renews her argument that the CNI remedy pay is "salary" within the meaning of ORS 238.005(20)(b)(C) and, accordingly, that she had "creditable service" for January 2002 entitling her to PERS payments.

ORS 238.005(5) defines "creditable service" as "any period of time during which an active member is being paid a salary by a participating public employer[.]" To determine whether petitioner had creditable service for January 2002, we must determine whether she received a "salary" for that period. Salary for that purpose is defined, in part, as follows:

"(a) 'Salary' means the remuneration paid an employee in cash out of the funds of a public employer in return for services to the employer * * *.

"(b) 'Salary' includes but is not limited to:

"* * * * *

"(C) Retroactive payments made to an employee * * * pursuant to * * * order of * * * an administrative agency charged with enforcing federal or state law protecting the employee's rights to employment or wages, which shall be allocated to and deemed paid in the periods in which the work was done or in which it would have been done."

ORS 238.005(20). The parties agree that the CNI remedy pay was paid pursuant to ERB order, and that ERB is an "administrative agency charged with enforcing federal or state laws protecting the employee's rights to employment or wages." They disagree, however, about whether the payment was "retroactive" and whether it "is allocated to and deemed paid in the periods in which the work was done or in which it would have been done."

Petitioner argues that PERB erroneously concluded that the CNI remedy pay was not a retroactive payment under ORS 238.005(20)(b)(C). In support of her argument, petitioner points to the nature of the remedy fashioned by ERB and argues that "ERB sought to eliminate the explicit reward of strike breaking nurses by also rewarding striking nurses with the same salary received by the strike breakers."

According to petitioner, OHSU unlawfully paid the CNI during the strike period, and the ERB-ordered CNI remedy payments were designed to make the striking nurses whole for the injury done to them *during the strike period*. Thus, in petitioner's view, the CNI remedy pay is directly attributable to the strike period and, therefore, retroactive.

Petitioner also argues that the CNI remedy payments should be "allocated to * * * the periods" for work that "would have been done," as provided under ORS 238.005(20)(b)(C). When ERB ordered OHSU to make an equalizing payment to striking nurses, it ordered OHSU to pay "the equivalent CNI amount to strikers that it paid to nonstrikers." *Oregon Nurses Association*, 19 PECBR 696 (2002). Thus, in petitioner's view, because the original CNI bonus was paid as a salary bonus to nurses who crossed picket lines, the CNI remedy pay paid to striking nurses is also "salary," because it represents an amount of pay that the striking nurses would have received during the same period, but for the strike. And, because the payments remedied OHSU's unlawful payment of the CNI during the strike, they are related to and therefore should be *allocated to* the strike period. Accordingly, petitioner argues that the CNI remedy pay is salary under ORS 238.005(20)(b)(C), and PERB erred in reaching its contrary conclusion and in denying her service credit for January 2002.

PERB responds that the CNI remedy payments were not retroactive payments because striking nurses did not receive CNI remedy pay unless and until they returned to work. In PERB's view, if the payments were retroactive, ERB would have ordered OHSU to pay CNI remedy pay to all nurses who participated in the strike, regardless of whether they returned to work. ERB could have ordered the payments to be "retroactive," "creditable to January 2002," or "back pay," but, because the CNI remedy did not become payable to the nurses until *after* the strike and *only if* they returned to work, they are not "retroactive."

Additionally, PERB argues that that same feature of the CNI remedy pay—that striking nurses were not entitled to receive payments unless they returned to work—demonstrates that the payments cannot be "allocated to" the strike

period. In PERB's view, the payments were not for a period in which work "would have been done" by the striking nurses. Because petitioner was voluntarily on strike and OHSU did not prevent petitioner from crossing the picket line and returning to work, the strike period is best characterized as a period in which work *was not done* by petitioner and the other striking nurses, rather than a period in which work *would have been done.* PERB also argues that the payments cannot be allocated to January 2002 because the CNI remedy pay bore no correlation to the hours that petitioner would have worked, and the ERB order specifically stated that "OHSU is not being required to pay for *work not done."* *Oregon Nurses Association,* 19 PECBR 696 (2002) (emphasis added). Stated another way, PERB argues that OHSU was not required to pay petitioner and the other striking nurses for work that *would have been done* by them.

We need not resolve whether the CNI remedy payment that petitioner received was a retroactive payment under ORS 238.005(20)(b)(C) because, even if it were, we conclude that it was not a payment for work that was or would have been done by petitioner in January 2002.

ERB ordered "equalizing payments" to equalize pay between nonstriking workers and those striking workers who continued to work at OHSU after the strike. OSHU was not required to pay the CNI remedy pay to striking nurses who did not return to OHSU after the strike. If, as petitioner argues, the payments were truly retroactive payments for work that would have been done, then all striking nurses should have received the CNI remedy pay, because all of the striking nurses would have worked but for the strike.

Furthermore, the CNI remedy pay was not for work that would have been done during the strike because the payments bore no relationship to the hours that striking nurses would have worked during the strike but, instead, were based on the amount of CNI bonuses that OHSU paid to the nurses who worked during the strike. Additionally, although not conclusive, ERB's characterization of the payments is illustrative: ERB's order specifically stated that "OHSU is not being required to pay for work not performed." *Oregon Nurses Association,* 19 PECBR 696 (2002). Stated another

way, ERB did not order OHSU to pay for work that would have been done by petitioner and the other striking nurses.

The CNI remedy pay that petitioner received was not "salary" under ORS 238.005(20)(b)(C). Accordingly, PERB did not err in concluding that petitioner was not entitled to service credit for January 2002.

Affirmed.