2012 COA 26

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Thomas Nathaniel SEXTON, Defendant–Appellant.**

**No. 10CA1206.**

Colorado Court of Appeals, Div. IV.

Feb. 16, 2012.

<hr>

John W. Suthers, Attorney General, John J. Fuerst, III, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Tameler Law Office, LLC, Karl S. Tameler, Pueblo, Colorado, for Defendant–Appellant.

Opinion by Chief Judge DAVIDSON.

¶ 1 Defendant, Thomas Nathaniel Sexton, appeals from the judgment of conviction entered on a jury verdict finding him guilty of possession of eight ounces or more of marijuana. We address, as an issue of first impression, whether section 13–90–107, C.R.S. 2011, or section 18–18–406.3, C.R.S.2011, governs a medical marijuana patient-defendant's waiver of doctor-patient confidentiality during criminal trial proceedings. We conclude, as did the trial court, that section 13–90–107 controls here, and therefore we affirm.

## I.  Background

¶ 2 In August 2007, the Pueblo County sheriff's office conducted an aerial marijuana eradication program in which trained officers flew over rural areas looking for clandestine marijuana grow operations. While flying over what he later learned was defendant's property, one of the officers, a detective, observed "a marijuana grow." He directed officers on the ground to the location to contact anyone who might be on the property. Finding no one there, the officers obtained a search warrant.

¶ 3 Once the warrant had issued, the detective entered the property. At that time, he noticed a piece of paper attached to a plywood board on a tree that said the property was a medical marijuana grow operation for the Colorado Compassion Club's certified members ("garden certificate"). He said that the garden certificate had places for ten members' numbers as well as several places for caregivers' signatures and information; however, the relevant information was missing or, where filled out, illegible. The detective discussed the garden certificate with the other officers conducting the search. They also called the district attorney's office to discuss the situation. However, because the 128 marijuana plants appeared grossly to exceed the legal limit, the officers proceeded to eradicate all the plants by pulling them out of the ground.

¶ 4 Defendant arrived on the property after the officers had completed the eradication. He showed the officers a notebook that contained medical marijuana registration cards for several patients, some of whom, himself included, had doctor recommendations for extended plant counts. Nonetheless, the officers confiscated the eradicated marijuana plants.

¶ 5 Once the plant material had dried out, officers separated the leaves from the stalks to obtain an accurate weight. The total weight, not including the stalks, was 20.4 pounds.

¶ 6 Defendant was charged with cultivation of marijuana and possession of eight or more ounces of marijuana. His primary defense was that his marijuana grow operation was legal under the Colorado Constitution. The jury acquitted defendant of cultivation, and found him guilty of possession. Defendant filed this appeal.

¶ 7 We reject most of defendant's contentions as without merit, moot, or not properly raised or preserved. However, although we do not agree with it, his argument regarding the waiver of his doctor-patient privilege requires statutory interpretation and, therefore, warrants a more extended discussion.

## II. Medical Marijuana in Colorado

¶ 8 In Colorado, an individual may register with the state as a medical marijuana patient if he satisfies certain criteria, which include providing "written documentation stating that the patient has been diagnosed with a debilitating medical condition and [a] physician's conclusion that the patient might benefit from the medical use of marijuana." Colo. Const. art. XVIII, § 14(3)(b)(I), (c). Once registered, the patient may raise medical use as an affirmative defense if he is thereafter charged with a violation of the state's criminal laws related to his medical marijuana use. See id. § 14(2)(a).

¶ 9 Each patient is limited to no more than two ounces of marijuana or six plants. Id. § 14(4)(a). "For quantities of marijuana in excess of these amounts, a patient . . . may raise as an affirmative defense . . . that such greater amounts were medically necessary to address [his] debilitating medical condition." Id. § 14(4)(b).

## III. Waiver

■ ¶ 10 A medical marijuana patient's confidential information is protected from disclosure, generally, under section 13–90–107(1)(d), C.R.S.2011, and specifically, under section 18–18–406.3(5), C.R.S.2011.

¶ 11 Section 13–90–107(1)(d) provides:

A physician, surgeon, or registered professional nurse duly authorized to practice his or her profession pursuant to the laws of this state or any other state shall not be examined without the consent of his or her patient as to any information acquired in attending the patient that was necessary to enable him or her to prescribe or act for the patient. . . .

Under this statute, the patient's waiver of the confidential relationship with his physician can be explicit or implicit. No written documentation is required. *See, e.g., People v. Wittrein,* 221 P.3d 1076, 1083 (Colo.2009); *Cardenas v. Jerath,* 180 P.3d 415, 424 (Colo. 2008).

¶ 12 Section 18–18–406.3(5) concerns disclosure of a patient's confidential information from the medical marijuana registry, maintained by the Colorado Department of Public Health and Environment (department), and unlike section 13–90–107(1)(d), provides that a valid waiver must be in writing:

Any person including, but not limited to, any officer, employee, or agent of the department, or any officer, employee, or agent of any state or local law enforcement agency, who releases or makes public any confidential record or any confidential information contained in any such record that is provided to or by the marijuana registry of the department *without the written authorization* of the marijuana registry patient commits a class 1 misdemeanor.

(Emphasis supplied.)

¶ 13 At trial, citing the absence of a written waiver, defendant objected to the prosecution's attempt during its case-in-chief to present testimony from the physician who had recommended defendant's medical marijuana registry renewal with extended plant counts. The court excluded the testimony, determining that it was privileged and, implicitly, that the privilege had not been waived. However, after defendant had presented evidence sufficient to raise the affirmative defense of medical necessity for an extended plant count, the court allowed the physician to testify in rebuttal, reasoning that defendant had waived the doctor-patient privilege under section 13–90–107(1)(d) "by bringing his medical situation into evidence."

¶ 14 Defendant does not dispute that assertion of the affirmative defense of medical necessity operates as a waiver of the doctor-patient privilege under section 13–90–107(1)(d), but, citing section 18–18–406.3(5), contends that it does so only if there is a written document confirming that waiver. He argues that because it was undisputed that there was no written waiver, the trial court erred by allowing the physician's testimony.

¶ 15 As a matter of statutory interpretation, we review de novo the trial court's determination that the controlling statute here was section 13–90–107, not section 18–18–406.3. *See People v. Williamson,* 249 P.3d 801, 803 (Colo.2011); *People v. Hill,* 228 P.3d 171, 173–74 (Colo.App.2009). We agree with

the court that the absence of a writing to confirm defendant's waiver of his privilege here was of no consequence.

¶ 16 In interpreting statutes, our primary task is to ascertain and give effect to the legislature's intent. *Williamson,* 249 P.3d at 803; *People v. Yascavage,* 101 P.3d 1090, 1093 (Colo.2004). We do this by first looking to the plain language of the statute. *Yascavage,* 101 P.3d at 1093. "The language at issue must be read in the context of the statute as a whole and the context of the entire statutory scheme." *Jefferson Cnty. Bd. of Equalization v. Gerganoff,* 241 P.3d 932, 935 (Colo.2010); *see In Interest of R.L.H.,* 942 P.2d 1386, 1388 (Colo.App.1997). Where the statute is clear and unambiguous, we apply it as written. *Lombard v. Colo. Outdoor Educ. Ctr., Inc.,* 187 P.3d 565, 570 (Colo.2008); *People v. Benavidez,* 222 P.3d 391, 393 (Colo.App.2009).

¶ 17 However, if the statute is ambiguous or appears to conflict with another statute, to determine legislative intent we may consider the legislative history and declarations of purpose, the problem addressed, the statutory remedy, and the consequences of a particular construction. *See Gerganoff,* 241 P.3d at 935; *Jenkins v. Panama Canal Ry. Co.,* 208 P.3d 238, 241–44 (Colo.2009); *Lombard,* 187 P.3d at 570. We favor a construction that harmonizes statutes and avoids conflicts. *See People v. Mojica–Simental,* 73 P.3d 15, 17–18 (Colo.2003).

¶ 18 Here, both sections 13–90–107 and 18–18–406.3(5) address patient confidentiality and a conflict between them is certainly possible. Thus, we look to resources beyond the statutes' plain language, including legislative history, to determine legislative intent.

¶ 19 Section 13–90–107(1)(d) protects the confidential nature of the relationship between a patient and medical staff as they consult for medical treatment. *Hartmann v. Nordin,* 147 P.3d 43, 49 (Colo.2006); *Alcon v. Spicer,* 113 P.3d 735, 738–39 (Colo.2005). Its express purpose is "to encourage [patient] confidence and to preserve it inviolate." § 13–90–107(1), C.R.S.2011; *see Cardenas,* 180 P.3d at 424. The section is located under the headings, "Courts and Court Procedure, Witnesses," and is titled, "Who may not testify without consent." Thus, its unequivocal intent is to protect a patient's confidences from unauthorized disclosure in a trial setting. *See Gerganoff,* 241 P.3d at 936 ("[T]he heading of a statute, although not dispositive of legislative intent, can aid in determining legislative intent.").

¶ 20 Section 18–18–406.3, in comparison, concerns the operation of the medical marijuana patient registry and establishes penalties for certain violations of the provisions of article XVIII, section 14 of the Colorado Constitution. *See* § 18–18–406.3(1)(i), C.R.S. 2011 ("This section reflects the considered judgment of the general assembly regarding the meaning and implementation of the provisions of section 14 of article XVIII of the state constitution."). The section is located under the headings, "Criminal Code, Uniform Controlled Substances Act, Offenses and Penalties," and is titled, "Medical use of marijuana by persons diagnosed with debilitating medical conditions—unlawful acts—penalty—medical marijuana cash fund." Further, legislative history indicates that, specifically in enacting section 18–18–406.3(5), the General Assembly's primary concern was protecting a medical marijuana patient's confidential registration information from being used for unlawful purposes rather than protecting a patient's communications with his physician. *See* Hearings on H.B. 1371 before H.Crim. Justice Comm. (Mar. 27, 2001) & 2d Reading (Apr. 2, 2001), 63d Gen. Assemb., 1st Sess.

¶ 21 We conclude that there is no conflict between these statutes: they serve different purposes and address different societal concerns. *See Frazier v. People,* 90 P.3d 807, 812 (Colo.2004). While section 13–90–107(1)(d) protects a patient from unauthorized invasions into his private medical affairs, section 18–18–406.3(5) deters those with lawful access to the medical marijuana patient registry from using it for unlawful purposes. Indeed, to construe the statutes otherwise would allow a medical marijuana patient-defendant to put on evidence of an affirmative defense, while severely limiting the prosecution's ability to rebut it. *See Benavidez,* 222 P.3d at 393 (we avoid inter-

pretations that lead to an absurd or illogical result).

¶ 22 Here, by raising the affirmative defense of medical use, defendant validly waived his privilege under section 13–90–107(1)(d). Thus, the physician's rebuttal testimony concerning his conversations with defendant was a lawful disclosure under section 13–90–107(1)(d), rather than an unlawful disclosure of defendant's confidential medical marijuana patient registry information. Accordingly, we conclude, as did the trial court, that the written waiver requirements of section 18–18–406.3(5) simply did not apply.

### IV. Defendant's Other Arguments

A. We disagree with each of the four grounds raised by defendant challenging the search warrant for lack of veracity and absence of probable cause.

¶ 23 A search warrant shall issue only upon a showing of probable cause, supported by oath or affirmation. *People v. Kerst*, 181 P.3d 1167, 1171 (Colo.2008). In reviewing a trial court's suppression ruling, we defer to its findings of fact unless clearly erroneous or not supported by the record, but review its legal conclusions de novo. *People v. Glick*, 250 P.3d 578, 582 (Colo. 2011).

¶ 24 1. Whether the ground officers trespassed on defendant's property to confirm that the plants were marijuana was immaterial to the validity of the warrant because the allegations of possible illegal activity in the affidavit were based solely on the detective's aerial observations.

¶ 25 2. Because the affidavit reflected that the detective had fifteen years of experience and training in identifying marijuana grow operations, omission from the affidavit of previous misidentifications did not compromise the validity of the warrant. *See People v. Leftwich*, 869 P.2d 1260, 1265–66 (Colo. 1994) (in reviewing an affidavit, the magistrate considers the totality of the circumstances, including the affiant's relevant experience and training, knowledge at the time he or she wrote the affidavit, and the veracity and basis of knowledge of anyone supplying hearsay information); *see also Kerst*, 181

P.3d at 1171 ("A fact is material for the purposes of vitiating an entire affidavit only if its omission rendered the affidavit 'substantially misleading' as to the existence of probable cause to the magistrate who issued the warrant.").

¶ 26 3. Although the affidavit described a possible, rather than a confirmed, marijuana grow operation, the description of the detective's experience and training in locating marijuana grow operations provided a substantial basis for concluding that probable cause existed. *See People v. Gutierrez*, 222 P.3d 925, 937 (Colo.2009) (probable cause is not a precise calculation based on certainties, but rather a reasonable belief based on probabilities); *People v. Mapps*, 231 P.3d 5, 7–8 (Colo.App.2009) (same); *see also People v. Pacheco*, 175 P.3d 91, 94 (Colo.2006) ("A court reviewing the validity of a search warrant does not engage in de novo review but rather examines whether the magistrate had a substantial basis for concluding that probable cause existed.").

¶ 27 4. That the affidavit concluded that defendant's grow operation was only "potentially" illegal did not undermine the finding of probable cause. Officers need not "refrain from searching premises under circumstances in which the activity in question could *potentially* be legal," as long as the circumstances also support a reasonable belief that evidence of illegal activity will be found. *Mendez v. People*, 986 P.2d 275, 281 n. 4 (Colo.1999); *see United States v. Naugle*, 997 F.2d 819, 823 (10th Cir.1993); *Kerst*, 181 P.3d at 1172.

B. We disagree that the trial court erred by denying defendant's motions for acquittal.

¶ 28 A trial court should grant a motion for judgment of acquittal "only if the relevant evidence, both direct and circumstantial, when viewed as a whole in the light most favorable to the prosecution, is not substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Roberts v. People*, 203 P.3d 513, 518 (Colo.2009), *superseded by* § 18–4–401(4),

C.R.S.2011, *on other grounds as stated in People v. Simon*, 266 P.3d 1099, 1108 (Colo. 2011). Because the sufficiency of the evidence presents a question of law, we review the trial court's decisions de novo. *See Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005).

■ ¶ 29 1. At the close of its case-in-chief, the prosecution had presented evidence that defendant was growing marijuana and that the total amount in his possession was more than eight ounces. There was also evidence that defendant may have been growing marijuana pursuant to the constitutional medical use exception, and that he had been recommended for extended plant counts. However, to establish that he was allowed to grow more than the standard number of plants, defendant had to prove that "greater amounts were medically necessary to address [his] debilitating medical condition." Colo. Const. art. XVIII, § 14(4)(b).

¶ 30 Based on our review of the record, we cannot conclude that at this mid-point in the trial, the evidence was sufficient to require the conclusion that defendant's extended plant count was medically necessary. *See People v. Traubert*, 625 P.2d 991, 993 (Colo. 1981) ("Although the People's evidence may have raised the opportunity for the defendant to assert [the] affirmative defense, the People's evidence did not establish that reasonable minds could *only* conclude that the [affirmative defense had been established]." (emphasis added)); *see also People v. Gonzales*, 666 P.2d 123, 128 (Colo.1983) (determining the credibility of the witnesses, the weight to be given the evidence, and the reasonable inferences to be drawn therefrom are matters within the sole province of the jury).

¶ 31 2. Because we have determined that the trial court did not err by denying defendant's mid-trial motion for judgment of acquittal or by allowing the physician to testify on rebuttal, we also reject defendant's contention that the court erred by denying his motion, based on those grounds, for judgment of acquittal at the end of trial.

**C. We disagree with defendant's contention that one of the witnesses improperly commented on his right to remain silent.**

■ ¶ 32 We review the trial court's rulings on the admissibility of evidence for an abuse of discretion. *People v. Morales*, 298 P.3d 1000, —— (Colo.App.2012). Defendant did not object to the evidence on the same grounds he raises on appeal, thus, we review for plain error. *People v. Greer*, 262 P.3d 920, 924 (Colo.App.2011). ("We recognize as plain error those obvious and substantial errors that 'so undermined the fundamental fairness of the trial itself ... as to cast serious doubt on the reliability of the judgment.'" (quoting in part *People v. Miller*, 113 P.3d 743, 749–50 (Colo.2005))).

■ ¶ 33 One of the officers who had spoken with defendant at the scene testified that, when he asked defendant if he had previously grown marijuana on the property, defendant responded "that he was not going to answer that question." We disagree with defendant's argument that this response invoked his right to remain silent. To the contrary, we agree with the People that it was reasonable to understand defendant as saying by his response that he did not want to answer that one particular question, not all questioning in general. *See People v. Arroya*, 988 P.2d 1124, 1131 (Colo.1999) (to invoke the right to remain silent, a reasonable officer under the circumstances would have to have understood that the suspect wanted to cut off further questioning); *People v. Jimenez*, 217 P.3d 841, 860 (Colo.App. 2008).

**D. We do not address defendant's remaining contentions.**

¶ 34 1. The jury acquitted defendant of the cultivation charge. Thus, because they relate solely to that charge, defendants' allegations concerning destruction of evidence and a witness's comment that defendant had previously cultivated marijuana are moot. *See Moore v. People*, 925 P.2d 264, 267 (Colo. 1996); *People v. Thomas*, 189 Colo. 490, 493–94, 542 P.2d 387, 389 (1975).

¶ 35 2. On appeal, defendant's only argument that the trial court erred by denying

his motion to dismiss based on outrageous government conduct is an "incorporation by reference" of his previously filed briefs with the trial court on this issue. He provides no other argument or authority to support his contention. *See* C.A.R. 57 (incorporation of previously filed pleadings is prohibited); *Fisher v. Cmty. Banks of Colo., Inc.,* —— P.3d ——, ——, 2010 WL 3432205 (Colo.App. 2010) (*cert. granted* Mar. 14, 2011) (incorporation by reference of previously filed pleadings improperly "shifts to the appellate court 'the task of locating and synthesizing the relevant facts and arguments'" (quoting in part *Castillo v. Koppes–Conway,* 148 P.3d 289, 291 (Colo.App.2006))); *Castillo,* 148 P.3d at 291 (incorporation by reference of previously filed pleadings "'makes a mockery' of the rules that govern the length of briefs").

¶ 36 Judgment affirmed.

Judge STERNBERG * and Judge NIETO * concur.