**Gary DILLABAUGH, Plaintiff–Appellant,**

v.

**John J. ELLERTON, Defendant–Appellee.**

**No. 10CA1456.**

Colorado Court of Appeals, Div. II.

June 23, 2011.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2010.

McGloin, Davenport, Severson and Snow, Gary C. Davenport, Kyle W. Davenport, Denver, Colorado, for Plaintiff–Appellant.

Holley, Albertson & Polk, P.C., Dennis B. Polk, Heather S. Hodgson, Golden, Colorado, for Defendant–Appellee.

Opinion by Judge WEBB.

In this post-judgment collection proceeding, plaintiff, Gary Dillabaugh, appeals the trial court's order determining that an obligation of Sefton Resources, Inc. (Sefton), to defendant, John J. Ellerton, Sefton's chief executive officer, is exempt from attachment or garnishment under section 13–54–102(1)(s), C.R.S.2010, as property or funds payable from a "retirement plan." We affirm.

I. Background

Dillabaugh obtained a judgment against Ellerton and attempted to garnish Sefton's obligation to him. Sefton responded that it owed Ellerton a "future retirement obligation" totaling $839,832. Ellerton argued that this obligation was exempt from garnishment or attachment under section 13–54–102(1)(s) because it arose from a "retirement plan."

The parties briefed the exemption issue and submitted documents to the trial court. Without holding an evidentiary hearing, the court found that Sefton's obligation to Ellerton "fit [the requirements of section 13–54–102(1)(s) ] as property held in or payable from a retirement plan," and thus was exempt from garnishment or attachment.

## II. Analysis

■ Dillabaugh contends the trial court erred because a "retirement plan" must share the attributes of an Employee Retirement Income Security Act (ERISA) qualified plan or tax-qualified plan, and Sefton's obligation did not. We disagree with Dillabaugh's narrow interpretation of the exemption and conclude that the record supports the factual determination of the trial court.

### A. Standard of Review

The meaning of "retirement plan" under section 13-54-102(1)(s) has not been addressed in any reported Colorado appellate decision. We review an issue of statutory construction de novo. *See, e.g., Stamp v. Vail Corp.,* 172 P.3d 437, 442 (Colo.2007). However, we must accept the trial court's factual findings unless they are so clearly erroneous as to have no support in the record. *See, e.g., Bd. of County Comm'rs v. Rohrbach,* 226 P.3d 1184, 1186 (Colo.App. 2009).

### B. Section 13-54-102(1)(s)

Section 13-54-102, C.R.S.2010, exempts various categories of property from levy and sale under a writ of attachment or a writ of execution. Those exemptions also apply to writs of garnishment. *See* § 13-54-106, C.R.S.2010; *In re Marriage of LeBlanc,* 944 P.2d 686, 687 (Colo.App.1997).

Section 13-54-102(1)(s) exempts the following:

> Property, including funds, held in or payable from *any* pension or *retirement plan* or deferred compensation plan, *including* those in which the debtor has received benefits or payments, has the present right to receive benefits or payments, or has the right to receive benefits or payments in the future *and including* pensions or plans which qualify under the federal "Employee Retirement Income Security Act of 1974", as amended, as an employee pension benefit plan, as defined in 29 U.S.C. sec. 1002, any individual retirement account, as defined in 26 U.S.C. sec. 408, any Roth individual retirement account, as defined in 26 U.S.C. sec. 408A, and any plan, as defined in 26 U.S.C. sec. 401, and as these plans may be amended from time to time.

(Emphasis added.) Because neither party characterizes Sefton's obligation as a "pension" or a "deferred compensation plan," we address only whether the trial court correctly determined that this obligation was payable from a "retirement plan."

When interpreting a statute, our primary objective is to effectuate the intent of the General Assembly by looking at the plain meaning of the language used, considered within the context of the statute as a whole. *Bly v. Story,* 241 P.3d 529, 533 (Colo.2010). Where the statutory language is clear and unambiguous, we do not resort to legislative history or other rules of statutory construction. *Smith v. Exec. Custom Homes, Inc.,* 230 P.3d 1186, 1189 (Colo.2010).

Dillabaugh asserts that because the statute does not define the phrase "retirement plan," it is ambiguous. We accept his premise but reject his conclusion.

■ The absence of a statutory definition does not create ambiguity if, because the undefined phrase is one of common usage, a court can discern its usual and ordinary meaning. *See Cohen v. State,* 197 Colo. 385, 388–89, 593 P.2d 957, 960 (1979); *Ray v. Indus. Claim Appeals Office,* 124 P.3d 891, 893 (Colo.App.2005), *aff'd,* 145 P.3d 661 (Colo.2006). Here, the following authorities establish such a meaning:

- "Retirement plan" means "a systematic arrangement established by an employer for guaranteeing an income to employees upon retirement according to definitely established rules with or without employee contributions." *In re Staniforth,* 116 B.R. 127, 131 (Bankr.W.D.Wis.1990) (quoting *Webster's Third New International Dictionary* 1939 (1986)).

- *Black's Law Dictionary* defines "retirement plan" as "[a]n employee benefit plan ... provided by an employer (or a self-employed person) for an employee's retirement." *Black's Law Dictionary* 603, 1431 (9th ed. 2009). In turn, *Black's* defines "employee benefit plan" broadly to mean "[a] written stock-purchase, savings, option, bonus, stock appreciation,

profit-sharing, thrift, incentive, pension, or similar plan solely for employees, officers and advisors of a company." *Id.* at 602.

- In a different context, the General Assembly has defined "retirement plan" broadly as "a plan or account created by an employer, the principal, or another individual to provide retirement benefits or deferred compensation of which the principal is a participant, beneficiary, or owner, including [various enumerated qualified and nonqualified plans or accounts under the Internal Revenue Code]." § 15–14–738(1), C.R.S.2010.

Despite these definitions, Dillabaugh relies on *In re Ludwig,* 345 B.R. 310 (Bankr. D.Colo.2006), which adopted a narrower meaning: only plans that possess attributes of the specific ERISA–qualified or tax-qualified examples listed in the statute. By applying statutory construction principles of *noscitur a sociis*[1] and *ejusdem generis*[2] to these examples, *Ludwig,* 345 B.R. at 318–19, rejected a debtor's argument that his variable annuity was exempt as a "retirement plan."

■ We are not required to follow an intermediate federal court's interpretation of state law. *See High Gear & Toke Shop v. Beacom,* 689 P.2d 624, 628 n. 1 (Colo.1984) (federal circuit's court's construction of Colorado statute was not binding on state supreme court); *SI Sec. v. Bank of Edwardsville,* 362 Ill.App.3d 925, 299 Ill.Dec. 263, 841 N.E.2d 995, 1001 (2005) (bankruptcy court's construction of Illinois statute was not binding on state appellate court). Further, we disagree with *Ludwig*'s interpretation of "retirement plan" for three reasons.

■ First, *Ludwig* applied *noscitur a sociis* and *ejusdem generis* without determining that "retirement plan" is ambiguous. We have concluded that it is not. And where a

word or phrase has a commonly understood meaning, *noscitur a sociis* and *ejusdem generis* cannot be applied to create ambiguity. *See In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 219 (5th Cir.2007) (courts may not apply these canons to inject ambiguity into otherwise unambiguous terms); *Tourdot v. Rockford Health Plans, Inc.,* 439 F.3d 351, 354 (7th Cir.2006) (noting impropriety of using *ejusdem generis* to both create and resolve ambiguity because courts may not use the canon "to defeat the obvious purpose or plain meaning of the text"); *see also K9Shrink, LLC v. Ridgewood Meadows Water & Homeowners Ass'n,* — P.3d —, —, 2011 WL 2308648 (Colo.App.2011).

Second, *Ludwig*'s restrictive interpretation of "retirement plan" ignores the expansive term "any," which precedes this phrase, and "including," which precedes the examples. *See People v. Owens,* 219 P.3d 379, 384 (Colo. App.2009) (generally, when used in a statute, the adjective "any" means "all"); *Lyman v. Town of Bow Mar,* 188 Colo. 216, 222, 533 P.2d 1129, 1133 (1975) (noting that "include" is ordinarily used as a word of extension or enlargement and warning against transmogrifying "include" into the word "mean"); *see also* Kelly Reiman, *Rights of the Debtor and Creditor to Retirement Plan Benefits: An Update,* 25 Colo. Law. 47 (May 1996) (viewing section 13–54–102(1)(s) expansively to cover many types of "non-qualified plans").

■ Third, even if "retirement plan" is ambiguous, *ejusdem generis* is merely a rule of construction that can be disregarded. *Martinez v. People,* 111 Colo. 52, 58, 137 P.2d 690, 693 (1943) (declining to apply the doctrine where "the general words must bear a different meaning from the specific words or be meaningless"); *see also Corona Coal Co. v. United States,* 21 F.2d 489, 491 (N.D.Ala. 1927) ("The doctrine of *ejusdem generis* and the maxim *noscitur a sociis* are not fixed rules of statutory construction."), *aff'd,* 23 F.2d 673 (5th Cir.1928).[3]

---

1. "A canon of construction holding that the meaning of an unclear word or phrase should be determined by the words immediately surrounding it." *Black's Law Dictionary* 1087 (8th ed. 2004).

2. "A canon of construction that when a general word or phrase follows a list of specifics, the

general word or phrase will be interpreted to include only items of the same type as those listed." *Black's Law Dictionary* 556 (8th ed. 2004).

3. *See generally,* 2A *Sutherland Statutory Construction* § 47:16 (7th ed.) ("[T]he maxim *noscitur a sociis* is a mere guide to legislative intent. The

Instead, we are persuaded that if ambiguity exists, a broader interpretation comports with the requirement that Colorado's exemption statutes be given liberal interpretation. *See Sandberg v. Borstadt,* 48 Colo. 96, 99, 109 P. 419, 421 (1910); *see also* Colo. Const. art. XVIII, § 1 (requiring the General Assembly to pass "liberal homestead and exemption laws"); *In re Larson,* 260 B.R. 174, 193 (Bankr.D.Colo.2001) (noting long-standing tradition of Colorado courts to construe exemption laws liberally in favor of debtors).

A broader interpretation also avoids the difficulties inherent in both qualified and nonqualified plans of determining vesting. Unless the retirement obligation has vested in the plan participant, it remains property of the employer. Thus, garnishment proceedings would primarily focus on vesting requirements. This determination would be more problematic in nonqualified plans because they are not subject to ERISA rules on vesting. *See* 29 U.S.C. § 1051(2) (coverage); 29 U.S.C. § 1053(a) (minimum vesting standards).

Therefore, we conclude that "retirement plan" is not limited to plans that possess attributes of ERISA–qualified or tax-qualified plans.

### C. Sefton's Obligation was Payable from a "Retirement Plan"

■ Having concluded that the plain meaning of "retirement plan" in section 13–54–102(1)(s) is broader than the meaning urged by Dillabaugh, we further conclude that the following evidence supports the trial court's factual determination that Sefton's obligation to Ellerton "was property held in or payable from a retirement plan": (1) Sefton and Ellerton treated the obligation as being for Ellerton's "retirement," (2) the obligation became due on Ellerton reaching age sixty-five, (3) the obligation arose, and was calculated based on, provisions in Ellerton's employment agreement addressing "retirement" and "employee retirement calculation," and (4) Sefton owed similar retirement obligations to four other executives in the company, to be calculated based on "monthly salary at date of retirement times a multiple for years of service." Thus, the trial court properly rejected Dillabaugh's portrayal of the obligation as a "performance bonus" not truly intended for Ellerton's retirement.[4]

Finally, while the trial court did not articulate its definition of "retirement plan," we discern no need to remand for further proceedings. Because the evidence was uncontroverted that Sefton's obligation to Ellerton lacked the attributes of the ERISA–qualified or tax-qualified examples in the statute, the court must have applied a broader definition. Moreover, Dillabaugh does not argue that this issue requires further factual development, nor does he request a remand to the trial court for presentation of additional evidence or further factual findings.

The trial court's order is affirmed.

Judge CASEBOLT and Judge DAILEY concur.

---

rule will not be applied where there is no ambiguity, or to thwart the legislative intent, or to make general words meaningless. The maxim is only an extrinsic aid and should only be used when the clear meaning of the words used in the statute is doubtful. Formalistic application of the rule should be avoided for it assumes the existence of self-evident meaning in particular words." (footnotes omitted)).

4. Based on the limited materials provided to the trial court, Sefton's obligation to Ellerton resembles what is commonly called a "top hat" plan.

Top hat plans are (1) unfunded (i.e., paid solely from the general assets of the employer), and (2) maintained primarily for a select group of management or highly compensated employees. *See Demery v. Extebank Deferred Compensation Plan (B),* 216 F.3d 283, 287 (2d Cir.2000); *Gallione v. Flaherty,* 70 F.3d 724, 725 (2d Cir.1995). They allow an employee to defer receipt of a portion of compensation until retirement, when the employee may be in a lower tax bracket. *See In re IT Group, Inc.,* 448 F.3d 661, 664–65 (3d Cir.2006).