2013 COA 163

**COMMERCIAL RESEARCH, LLC, Plaintiff–Appellee,**

v.

**Gary S. ROUP, Defendant–Appellant.**

**Court of Appeals No. 12CA0453**

Colorado Court of Appeals, Division IV.

Announced December 5, 2013

Pitkin County District Court No. 10CV38, Honorable Denise K. Lynch, Judge

Stokes & Wolf, P.C., James R. Wolf, Denver, Colorado, for Plaintiff–Appellee.

Gary S. Roup, Pro Se.

Opinion by JUDGE J. JONES

¶ 1 This case presents the question whether a health savings account (HSA) meeting the requirements of 26 U.S.C. § 223 (2006) is a "retirement plan" as contemplated by the Colorado statute exempting certain property from garnishment, section 13–54–102, C.R.S. 2013. We hold that it is not and therefore affirm the district court's order denying judgment debtor Gary S. Roup's claim of exemption.

## I. Background

¶ 2 Commercial Research LLC (Creditor) obtained an assignment of a default judgment that had been entered against Mr. Roup in a Texas court. Creditor then filed the judgment in Colorado and began collection proceedings against Mr. Roup's assets, including $3,729 held in an HSA. In the course of the proceedings, Mr. Roup asserted that the funds in his HSA were exempt from attachment or garnishment because the HSA qualified as a "retirement plan" under section 13–54–102(1)(s). The district court ruled that Mr. Roup's HSA was not a pension, retirement, or deferred compensation plan because the HSA merely allowed Mr. Roup to defer income on a tax-exempt basis to pay medical bills. The court concluded that no authority supported exempting the HSA from garnishment, and consequently the court ordered the funds in Mr. Roup's HSA to be released to Creditor.

¶ 3 In the course of the district court proceedings, Mr. Roup filed for bankruptcy protection and was granted a discharge. Because we were unable to determine from the record the effect that Mr. Roup's discharge had on the continuing validity of Creditor's garnishment against Mr. Roup's HSA, and were concerned that the case might have become moot, we remanded this case for further argument of the parties and for findings by the trial court. On remand, the district court ruled that the underlying judgment had been discharged in bankruptcy, but that the discharge did not extinguish Creditor's garnishment because Mr. Roup had not taken any affirmative step toward extinguishing the lien. See In re Haberman, 516 F.3d 1207, 1209 (10th Cir.2008) ("[L]iens generally pass through bankruptcy unaffected."); In re Deutchman, 192 F.3d 457, 460 (4th Cir.1999) ("In order to extinguish or modify a lien, the debtor must take some affirmative step toward that end."). Mr. Roup does not challenge that ruling on appeal.

¶ 4 Because Creditor's garnishment of Mr. Roup's HSA survived bankruptcy, this case still presents an actual controversy, and we therefore proceed to consider the merits of the appeal. See In re Marriage of Wiggins, 2012 CO 44, ¶ 16, 279 P.3d 1.

## II. Discussion

¶ 5 Mr. Roup contends that his HSA is a "retirement plan" and therefore exempt from garnishment under section 13–54–102(1)(s). We reject this contention.

### A. Standard of Review and Principles of Statutory Interpretation

¶ 6 Mr. Roup's contention requires us to interpret the meaning of a statutory term. We review such an issue de novo. Weinstein

*v. Colborne Foodbotics, LLC*, 2013 CO 33, ¶ 8, 302 P.3d 263.

¶ 7 The principles governing our interpretation of a statutory term are well-established. Our primary goals are to discern and give effect to the General Assembly's intent. *Hassler v. Account Brokers of Larimer Cnty., Inc.*, 2012 CO 24, ¶ 15, 274 P.3d 547; *Krol v. CF & I Steel*, 2013 COA 32, ¶ 15, 307 P.3d 1116. To do this, we look first to the statutory language; we give the words and phrases used in the statute their plain and ordinary meanings. *Hassler*, ¶ 15; *Krol*, ¶ 15. And we must also read the relevant statutory language in the dual contexts of the particular statute at issue and the entire related statutory scheme so as to give consistent, harmonious, and sensible effect to the statute's language. *Jefferson Cnty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 935 (Colo.2010); *BP Am. Prod. Co. v. Patterson*, 185 P.3d 811, 813 (Colo.2008). If, after doing this, we determine that the statute's meaning is clear, we will enforce it as written and will not resort to other rules of statutory construction. *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1089 (Colo.2011); *Krol*, ¶ 15. But if we determine that the statutory language is ambiguous—that is, susceptible of more than one reasonable meaning—we may consider other indicators of legislative intent. *See* § 2–4–203, C.R.S.2013; *Bd. of Cnty. Commis v. Costilla Cnty. Conservancy Dist.*, 88 P.3d 1188, 1193 (Colo.2004); *see also A.M. v. A.C.*, 2013 CO 16, ¶ 8, 296 P.3d 1026 ("Statutory language is ambiguous when it is susceptible to multiple valid interpretations.").

### B. The Exemption Statute

¶ 8 Article XVIII, section 1 of the Colorado Constitution provides: "The general assembly shall pass liberal homestead and exemption laws." To that end, the General Assembly has from time to time enacted laws placing specified property out of the reach of creditors. Many of these exemptions are currently collected in section 13–54–102. Of the many provisions therein, only one, subsection (1)(s), is relevant in this case. It provides:

> (1) The following property is exempt from levy and sale under writ of attachment or writ of execution:

> . . .

> (s) Property, including funds, held in or payable from any pension or retirement plan or deferred compensation plan, including those in which the debtor has received benefits or payments, has the present right to receive benefits or payments, or has the right to receive benefits or payments in the future and including pensions or plans which qualify under the federal "Employee Retirement Income Security Act of 1974 [ERISA]", as amended, as an employee pension benefit plan, as defined in 29 U.S.C. sec. 1002, any individual retirement account, as defined in 26 U.S.C. sec. 408, any Roth individual retirement account, as defined in 26 U.S.C. sec. 408A, and any plan, as defined in 26 U.S.C. sec. 401, and as these plans may be amended from time to time. . . .

¶ 9 In general, and as relevant here, this provision exempts from garnishment "any pension or retirement plan or deferred compensation plan." Mr. Roup concedes that an HSA is not a pension plan or a deferred compensation plan; he contends only that it is a "retirement plan."

### C. HSAs

¶ 10 An HSA is a "trust created or organized in the United States as a health savings account exclusively for the purpose of paying the qualified medical expenses of the account beneficiary, but only if the written governing instrument creating the trust meets [specified requirements]." 26 U.S.C. § 223(d)(1) (2006). "Under federal tax law, eligible individuals may establish and make pretax contributions to [an HSA] and then use those monies to pay or reimburse medical expenses." *Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 196 (4th Cir.2007). If money is withdrawn from an HSA, but is not used to pay the beneficiary's qualified medical expenses, the money becomes taxable income and the beneficiary must pay an additional twenty percent penalty. 26 U.S.C. § 223(f)(2), (4)(A) (2006). However, the twenty percent penalty does not apply if the beneficiary makes the withdrawal after becoming Medicare-eligible at age sixty-five.

26 U.S.C. § 223(f)(4)(C) (2006); 42 U.S.C. § 1395c (2006).

¶ 11 HSAs are not considered "employee welfare benefit plans" for purposes of the provisions of Title I of ERISA. *See* United States Dep't of Labor, Employee Benefits Security Administration, Field Assistance Bulletin 2004–1 (Apr. 7, 2004), *available at* http://www.dol.gov/ebsa/regs/fab_2004–1.html; *see also Fielder,* 475 F.3d at 196 (characterizing employer contributions to employees' HSAs as "non-ERISA healthcare spending").

### D. Analysis

¶ 12 Section 13–54–102(1)(s) does not define the term "retirement plan," nor does any other provision of article 54 of title 13. In *Dillabaugh v. Ellerton,* 259 P.3d 550 (Colo. App.2011), a division of this court looked to the following three definitions of the term to discern its usual and ordinary meaning:

- A "retirement plan" is " 'a systematic arrangement established by an employer for guaranteeing an income to employees upon retirement according to definitely established rules with or without employee contributions.' " *In re Staniforth,* 116 B.R. 127, 131 (Bankr.W.D.Wis.1990) (quoting *Webster's Third New International Dictionary* 1939 (1986)).

- A retirement plan is "[a]n employee benefit plan—such as a pension plan or Keogh plan—provided by an employer (or a self-employed person) for an employee's retirement." *Black's Law Dictionary* 603 (9th ed. 2009). As the *Dillabaugh* division noted, *Black's Law Dictionary* further defines "employee benefit plan" as a "[a] written stock-purchase, savings, option, bonus, stock-appreciation, profit-sharing, thrift, incentive, pension, or similar plan solely for employees, officers, and advisers of a company." *Id.* at 602.

- A retirement plan is "a plan or account created by an employer, the principal, or another individual to provide retirement benefits or deferred compensation of which the principal is a participant, beneficiary, or owner, including [various enumerated qualified and nonqualified plans

or accounts under the Internal Revenue Code]." § 15–14–738(1), C.R.S.2013.

*See Dillabaugh,* 259 P.3d at 552–53.

¶ 13 Considering these similar definitions, the *Dillabaugh* division concluded that the term "retirement plan" is not ambiguous and held that a "future retirement obligation" owed to the judgment debtor was a retirement plan within the meaning of section 13–54–102(1)(s). In so holding, the division rejected the argument that only plans that possess attributes of the specific ERISA-qualified or tax-qualified examples listed in section 13–54–102(1)(s) are "retirement plans." *Id.* at 553–54; *but see In re Ludwig,* 345 B.R. 310 (Bankr.D.Colo.2006) (applying the limiting construction rejected in *Dillabaugh* ).

¶ 14 We agree with the result and analysis in *Dillabaugh.* But that analysis does not definitively answer the question before us. Because of the nature of HSAs, we must more closely consider the "retirement" aspect of "retirement plan." "Retirement" is commonly understood to mean "[t]ermination of one's own employment or career, esp[ecially] upon reaching a certain age or for health reasons...." *Black's Law Dictionary* 1431 (9th ed. 2009); *see also Webster's Third New International Dictionary* 1939 (2002).

¶ 15 Considering this meaning, and the definitions identified by the division in *Dillabaugh,* we conclude that the plain meaning of "retirement plan" is, essentially, a plan intended to provide an income to a person after that person retires from a career. Put another way, it is a plan intended to replace, at least in part, an employee's loss of income attributable to retirement. *See Yaesu Elecs. Corp. v. Tamura,* 28 Cal.App.4th 8, 33 Cal. Rptr.2d 283, 286 (Cal.Ct.App.1994) (the purpose of the California statutory exemption from enforcement of a money judgment for a "private retirement plan" is "to safeguard a source of income for retirees at the expense of creditors"); *see also In re Lieberman,* 245 F.3d 1090, 1093 (9th Cir.2001) (the California exemption does not apply to "arrangements by individuals to use specified assets for retirement purposes," but only retirement plans "established or maintained by private

employers or employee organizations"); *In re Bloom*, 839 F.2d 1376, 1378 (9th Cir.1988) (the California exemption applies to plans which are "designed and used for retirement purposes").

¶ 16 This construction of "retirement plan" is consistent with its specific statutory context, as well as the larger context of the garnishment statutes generally. *See Gerganoff*, 241 P.3d at 935 (statutory language "must be read in the context of the statute as a whole and the context of the entire statutory scheme"). The exempted retirement plans specifically identified in section 13–54–102(1)(s)—federal ERISA-qualified plans, individual retirement accounts, and Roth individual retirement accounts—exist to provide an income to a person after retirement.[1] Further, both section 13–54–104(1)(b)(II)(B), C.R.S.2013, and section 13–54.5–101(2)(b)(II), C.R.S.2013, include "retirement benefits" within the definition of "earnings" subject to garnishment for child support and other specified debts, and list nonexclusive examples of such benefits, all of which are payable as retirement income under public retirement plans.

¶ 17 With the commonly understood meaning of "retirement plan" in mind, we further conclude that an HSA is not a "retirement plan" as contemplated by section 13–54–102(1)(s). *See In re Gardner*, 2013 WL 3804594, *4 (Bankr.D. Colo. No. 12–12485 HRT, July 19, 2013) (also so holding). Though such a plan may be used during retirement, the same could be said of any number of plans or assets available to individuals during their lifetimes. An HSA is not intended to replace income lost as a result of retirement; it is intended to cover medical costs incurred at any point during an individual's lifetime. *See* 26 U.S.C. § 223(d)(1) (2006) (an HSA holds funds "exclusively for the purpose of paying the qualified medical expenses of the account beneficiary"). Indeed, funds held in an HSA may be used for any reason at all, though subject to a tax penalty if withdrawn for nonmedical reasons before age sixty-five.

¶ 18 We are aware that the exemptions provided in section 13–54–102 are to be construed liberally in favor of debtors. *See Sandberg v. Borstadt*, 48 Colo. 96, 99, 109 P. 419, 421 (1910) ("Primarily, the exemption laws of the state are for the benefit of residents, and they are to be liberally construed."); *see also In re Larson*, 260 B.R. 174, 193 (Bankr.D.Colo.2001) (noting "the long-standing tradition in the courts of Colorado to construe all exemption[ ] laws liberally in favor of debtors"). But the principle of liberal construction cannot be used in a way that effectively alters the plain meaning of the statute. *See In re M.D.E.*, 2013 COA 13, ¶ 16, 297 P.3d 1058; *Henderson v. City of Fort Morgan*, 277 P.3d 853, 855 (Colo.App. 2011); *In re Adoption of T.K.J.*, 931 P.2d 488, 492–93 (Colo.App.1996); *Denver U.S. Nat'l Bank v. People ex rel. Dunbar*, 29 Colo.App. 93, 97, 480 P.2d 849, 851 (1970).

¶ 19 Debtor's reliance on section 24–51–101(42)(a), C.R.S.2013, which defines the term "salary" as used in statutes governing the Public Employees' Retirement Association (PERA), is misplaced. That statute states: " 'Salary' means ... amounts deducted from pay for a *health savings account ... or any other type of retirement health savings account program....*" The dissent points out that, in enacting this statute, the General Assembly appears to have relied in part on the Colorado Department of Personnel and Administration's Report to the General Assembly entitled "Health Savings Accounts: Feasibility of Offering an HSA–Qualified High Deductible Health Plan to State Employees," October 1, 2004 (Report). As relevant here, the Report states: "When the Medicare Prescription Drug Improvement and Modernization Act of 2003 ... was signed into law ... it created ... a new type of tax-favored account—a *Health Savings Account*—to help eligible individuals with qualifying high deductible health plans *save for* medical and *retiree health expenses.*" *Id.* at 2 (emphasis added).

¶ 20 Nonetheless, we do not find section 24–51–101(42) helpful. That provision was

---

**1.** As the division held in *Dillabaugh*, this does not mean "retirement plan" includes only those plans that are ERISA-qualified or tax-qualified.

But we believe the general nature of the plans identified is some indication of the General Assembly's intent.

enacted in 2004, many years after the enactment of section 13–54–102(1)(s). And its subject matter—defining salary for purposes of public employment retirement benefit calculation—is completely unrelated to the subject matter covered by section 13–54–102—exemptions from garnishment. We are reluctant to attempt to divine the General Assembly's intent in enacting section 13–54–102(1)(s) from the ambiguous action of a subsequent legislature many years later on an entirely unrelated subject. *See Bertrand v. Bd. of Cnty. Comm'rs,* 872 P.2d 223, 228 (Colo.1994) ("[T]he interpretation of one statute by reference to an unrelated statute is an unreliable means of ascertaining legislative intent."); *Colucci v. Town of Vail,* 232 P.3d 218, 220 (Colo.App.2009) (same); *see also* § 2–4–215(1), C.R.S.2013 (each General Assembly is a distinct entity); *Simpson v. Bijou Irrigation Co.,* 69 P.3d 50, 59 (Colo.2003) ("Our primary responsibility in any statutory analysis is to give effect to the legislative intent motivating the enactment of the statute.").[2]

¶ 21 And we observe that the very same Report pursuant to which the General Assembly apparently acted in adopting section 24–51–101(42) recognizes that HSAs take the place of other health plans, *see* Report at 2, and differ from retirement plans in that while funds deposited into a retirement account "are generally not withdrawn until retirement, funds contributed to an HSA may be withdrawn during the accumulation period to pay medical expenses not covered by insurance," *id.* at 4.[3]

¶ 22 In sum, the fact that an HSA may be used in retirement does not render it a "retirement plan" for purposes of section 13–54–102(1)(s). Because an HSA is not intended to replace a retiree's income lost as a result of retirement, it is not a "retirement plan." Therefore, Mr. Roup's HSA is not exempt from garnishment by Creditor.

¶ 23 The order is affirmed.

JUDGE GRAHAM concurs.

JUDGE TERRY dissents.

JUDGE TERRY, dissenting.

¶ 24 Because I conclude that the Health Savings Account (HSA) owned by defendant, Gary S. Roup (Debtor), is a "retirement plan" that is exempt from attachment or garnishment under section 13–54–102(1)(s), C.R.S.2013, I respectfully dissent.

¶ 25 Section 13–54–102(1)(s) exempts certain "[p]roperty, including funds, held in or payable from any pension or retirement plan or deferred compensation plan" from levy and sale under writ of attachment or writ of execution. Retirement plans include "those [plans] in which the debtor has received benefits or payments, has the present right to receive benefits or payments, or has the right to receive benefits or payments in the future." § 13–54–102(1)(s).

¶ 26 Section 13–54–102(1)(s) does not define the term "retirement plan." The majority has accurately set forth the three definitions of "retirement plan" described in *Dillabaugh v. Ellerton,* 259 P.3d 550, 552 (Colo.App.2011). The *Dillabaugh* division relied upon what it characterized as the usual and ordinary meaning of that term to conclude that the term was unambiguous. However, I conclude that, as applied to HSAs, the statute is ambiguous, as it does not provide a clear indication of whether an

---

**2.** The dissent cites *People v. Sexton,* 2012 COA 26, ¶ 17, 296 P.3d 157, for the proposition that we may construe section § 13–54–102(1)(s) by looking to section 24–51–101(42). But *Sexton* says that if a statute is ambiguous "we may consider the legislative history and declarations of purpose, the problem addressed, the statutory remedy, and the consequences of a particular construction." *Id.* Section 24–51–101(42) does not fall within any of those categories. *See also* § 2–4–203(1)(d), C.R.S.2013 (identifying aids in construing an ambiguous statute, including "laws upon the same or similar subjects").

**3.** We also observe that the General Assembly has twice amended section 13–54–102(1)(s) since its enactment in 1991, once in 2002 and once in 2007. On each occasion the General Assembly did so to reflect changes in federal law. Ch. 154, sec. 1, 2002 Colo. Sess. Laws 487 (adding "any Roth individual retirement account, as defined in 26 U.S.C. sec. 408A"); Ch. 428, sec. 27, 2007 Colo. Sess. Laws 2026 (adding "as amended" after the citation to ERISA). It did not amend the statute after Congress addressed the requirements and federal tax treatment of HSAs in 26 U.S.C. § 223, in 2003.

HSA, which allows accumulation of funds to pay medical expenses either before or after retirement, is encompassed within the meaning of a "retirement plan."

¶ 27 I have reviewed the legislative history of subsection (1)(s), which was enacted in 1991. Nothing in that history addresses the issue we now face.

¶ 28 Debtor cites section 24–51–101(42), C.R.S.2013, as support for his contention that an HSA is a retirement plan. That section, which defines the term "salary" as used in statutes governing the Public Employees' Retirement Association (PERA), states: " 'Salary' means ... amounts deducted from pay for a *health savings account ... or any other type of retirement health savings account program....*" In enacting that section, the legislature appears to have relied in part on the Colorado Department of Personnel and Administration's Report to the General Assembly entitled "Health Savings Accounts: Feasibility of Offering an HSA–Qualified High Deductible Health Plan to State Employees," October 1, 2004. The report states that it was prepared as required by Senate Bill 04–094. As relevant here, the report states, "[w]hen the Medicare Prescription Drug Improvement and Modernization Act of 2003 ... was signed into law ... it created ... a new type of tax-favored account—a *Health Savings Account*—to help eligible individuals with qualifying high deductible health plans *save for* medical and *retiree health expenses*." *Id.* at 2 (emphasis added).

¶ 29 I recognize that the reference to a health savings account as a type of retirement account in section 24–51–101(42)(a) dates from 2004, and was not contained in Colorado statutes when section 13–54–102(1)(s) was enacted in 1991. However, I agree with Debtor that this language indicates that—at least for purposes of the PERA statutes—the General Assembly considered an HSA to be a type of retirement savings account program, and that this should guide the interpretation of the latter statute. *See People v. Sexton,* 2012 COA 26, ¶ 17, 296 P.3d 157 (favoring construction that harmonizes and avoids conflicts among statutes).

¶ 30 I disagree with the majority's reluctance to consider this subsequent enactment in determining whether an HSA is an exempt retirement plan under section 13–54–102(1)(s). New types of retirement plans that did not exist when that section was first enacted must nevertheless be included within the meaning of "retirement plan" in the statute. *See Brandt v. Brandt,* 2012 CO 3, ¶ 44, 268 P.3d 406, 415 (construing undefined word in one statute by examining meaning of same word in other Colorado statutes); Henry M. Hart, Jr. & Albert M. Sacks, The Legal Process: Basic Problems in the Making and Application of Law 1114–15 (William N. Eskridge, Jr. & Philip P. Frickey eds., 1994) (indicating that statutes rendered ambiguous by changed circumstances should be interpreted in a manner to facilitate the statutes' purposes); *see also* Mail Fraud, 101 Harv. L.Rev. 329, 336–37 (1987) ("Statutory interpretation in light of new or changed circumstance is a power implicitly delegated to the courts by [the legislature].... If this power were denied to the courts, the application of statutes would be frozen—limited to the specific situations contemplated by the drafters at the time of enactment." (footnotes omitted) (citing R. Posner, The Federal Courts: Crisis and Reform 289–90 (1985))).

¶ 31 I resolve the ambiguity in subsection (1)(s) by applying the requirement that exemptions under section 13–54–102 must be construed liberally and in favor of debtors. *See* Colo. Const. art. XVIII, § 1 ("The general assembly shall pass liberal homestead and exemption laws."); *Sandberg v. Borstadt,* 48 Colo. 96, 99, 109 P. 419, 421 (Colo.1910) ("Primarily, the exemption laws of the state are for the benefit of residents, and they are to be liberally construed."); *Dillabaugh,* 259 P.3d at 554 (same); *In re Larson,* 260 B.R. 174, 193 (Bankr.D.Colo.2001) (noting "the long-standing tradition in the courts of Colorado to construe all exemption[ ] laws liberally in favor of debtors").

¶ 32 Applying such a liberal construction, I agree with the *Dillabaugh* division that we must look beyond "plans that possess attributes of the specific ERISA-qualified or tax-qualified examples" when determining whether a particular plan qualifies as a "re-

tirement plan" under section 13–54–102(1)(s). *Dillabaugh*, 259 P.3d at 554; *cf. In re Ludwig*, 345 B.R. 310, 319 (Bankr.D.Colo.2006) (bankruptcy court concluded that the Colorado legislature must have intended to limit the exemptions in § 13–54–102 (1)(s) to those plans that possess attributes similar to items listed in statutes, such as ERISA-qualified or tax-qualified plans).

¶ 33 In keeping with the General Assembly's intent as set forth in section 24–51–101(42)(a), I conclude that Debtor's HSA is a retirement plan under section 13–54–102(1)(s) because it is "'a plan or account created by an employer, the principal, or another individual to provide *retirement benefits* or deferred compensation of which the principal is a participant, beneficiary, or owner....'" *Dillabaugh*, 259 P.3d at 553 (emphasis added) (quoting § 15–14–738(1), C.R.S.2010). While HSAs enable individuals to pay for present medical expenses on a pretax basis, they also allow individuals to accumulate money over time in order to save for medical expenses during retirement. *See* Larry Grudzien, The Great Vanishing Benefit, Employer Provided Retiree Medical Benefits: The Problem and Possible Solutions, 39 J. Marshall L.Rev. 785, 803–04 (2006) (characterizing HSAs as potential solutions to "solve the retiree health care crisis" because they provide employees "an opportunity to contribute [to] future health care expenses").

¶ 34 HSAs provide retirement benefits in a manner similar to the other retirement plans and deferred compensation plans outlined in section 13–54–102(1)(s). Like individual retirement accounts (IRAs), which penalize individuals for early withdrawals but remove that penalty once an individual attains a certain age, HSAs penalize individuals for withdrawals made for nonqualified medical expenses, but eliminate that penalty once an individual becomes Medicare-eligible. *See Rousey v. Jacoway*, 544 U.S. 320, 327–28, 125 S.Ct. 1561, 161 L.Ed.2d 563 (2005); 26 U.S.C. § 223(f)(4)(C). Both IRAs and HSAs allow penalty-free withdrawals to pay medical expenses. *Rousey*, 544 U.S. at 328 n.3, 125 S.Ct. 1561 (noting that penalty-free distributions from an IRA are permitted for medical expenses under 26 U.S.C. § 72(t)(2)(B) and health insurance premiums under 26 U.S.C. § 72(t)(2)(D)); 26 U.S.C. § 223(f)(2), (4)(A) (distributions from an HSA that are not used exclusively for qualified medical expenses are included in gross income and subject to a twenty percent penalty).

¶ 35 I recognize that an HSA may serve more than one purpose, and that it need not necessarily be used to save for retirement. However, construing the exemption statute liberally, I conclude that an HSA is a "retirement plan" under section 13–54–102(1)(s), because an HSA provides retirement benefits to an individual. *See Dillabaugh*, 259 P.3d at 553.

¶ 36 In light of my conclusion that Debtor's HSA is a retirement plan, I conclude that it is exempt from garnishment or attachment by Creditor.