J. JONES, J., dissenting.
¶ 29 I respectfully dissent from the majority's conclusion that an avalanche is an inherent danger or risk of skiing as defined in subsection 33-44-103(3.5), C.R.S. 2013. In my view, that provision does not expressly or by clear implication include avalanches occurring on open, designated ski trails within its definition; therefore, the grant of immunity in section 33-44-112, C.R.S.2013, for injuries resulting from the inherent dangers and risks of skiing does not apply to injuries resulting from such avalanches. Because Mr. Norris was killed as a result of an avalanche on an open, designated trail within the ski area-an event for which IntraWest does not have immunity-I would reverse the district court's judgment and allow his family members' claims to proceed.
I. The Relevant Statutes
¶ 30 Section 33-44-112 provides in relevant part that "[n]otwithstanding any judicial decision or any other law or statute to the contrary, ... no skier may make any claim against or recover from any ski area operator for injury resulting from any of the inherent dangers and risks of skiing." This provision therefore grants any "ski area operator" (a term defined in subsection 33-44-103(7)) immunity from suit and damages for injuries resulting from inherent dangers and risks of skiing. See Johnson v. Bodenhausen, 835 F.Supp.2d 1092, 1094-96 (D.Colo.2011) ; see *87 also Air Wis. Airlines Corp. v. Hoeper, 2012 CO 19, ¶¶ 19-25, 320 P.3d 830, 2012 WL 907764 (discussing the distinction between immunity from suit and immunity from damages), rev'd on other grounds, 571 U.S. 237, 134 S.Ct. 852, 187 L.Ed.2d 744 (2014).[1]
¶ 31 Subsection 33-44-103(3.5), in turn, defines "inherent dangers and risks of skiing." It provides in full as follows:
"Inherent dangers and risks of skiing" means those dangers or conditions that are part of the sport of skiing, including changing weather conditions; snow conditions as they exist or may change, such as ice, hard pack, powder, packed powder, wind pack, corn, crust, slush, cut-up snow, and machine-made snow; surface or subsurface conditions such as bare spots, forest growth, rocks, stumps, streambeds, cliffs, extreme terrain, and trees, or other natural objects, and collisions with such natural objects; impact with lift towers, signs, posts, fences or enclosures, hydrants, water pipes, or other man-made structures and their components; variations in steepness or terrain, whether natural or as a result of slope design, snowmaking or grooming operations, including but not limited to roads, freestyle terrain, jumps, and catwalks or other terrain modifications; collisions with other skiers; and the failure of skiers to ski within their own abilities. The term 'inherent dangers and risks of skiing' does not include the negligence of a ski area operator as set forth in section 33-44-104(2). Nothing in this section shall be construed to limit the liability of the ski area operator for injury caused by the use or operation of ski lifts.
See also § 33-44-107(8)(c), C.R.S.2013 (setting forth what a warning on every lift ticket must state).
¶ 32 The question here is whether an avalanche occurring on an open, designated ski trail within a ski area clearly fits within this statutory definition of "inherent dangers and risks of skiing." If it does, the suit is barred. If it does not, the suit is not barred.
II. Standard of Review
¶ 33 The district court granted IntraWest's motion for judgment on the pleadings pursuant to C.R.C.P. 12(c), and its motion for a determination of a question of law pursuant to C.R.C.P. 56(b). As the majority correctly notes, we review decisions granting both such motions de novo. And the sole question presented in the context of those motions is one of statutory interpretation, the resolution of which is a question of law that we also review de novo.
III. Applicable Principles of Statutory Interpretation
¶ 34 Our primary goals in applying any statute are to discern and then give effect to the General Assembly's intent. Hassler v. Account Brokers of Larimer Cnty., Inc., 2012 CO 24, ¶ 15, 274 P.3d 547 ; Commercial Research, LLC v. Roup, 2013 COA 163, ¶ 7, 353 P.3d 859, 2013 WL 6354558. We first look to the statutory language, giving the words and phrases used therein their plain and ordinary meanings. Hassler, ¶ 15 ; Krol v. CF & I Steel, 2013 COA 32, ¶ 15, 307 P.3d 1116. But we do not consider those words and phrases in isolation. Rather, we must read the relevant statutory language in the dual contexts of the particular statute at issue and the entire related statutory scheme. Jefferson Cnty. Bd. of Equalization v. Gerganoff, 241 P.3d 932, 935 (Colo.2010) ; Commercial Research, ¶ 7. And we must do this so as to give consistent, harmonious, and sensible effect to all parts of the statute. Jefferson Cnty. Bd. of Equalization, 241 P.3d at 935.
¶ 35 If this analysis shows that the relevant statutory language is unambiguous, we apply it as written, without resorting to other methods of ascertaining legislative intent. Id. ; accord Denver Post Corp. v. Ritter, 255 P.3d 1083, 1089 (Colo.2011). But if this analysis shows that the relevant statutory language is ambiguous, we may consider other indicators of legislative intent. Jefferson Cnty. Bd. of Equalization, 241 P.3d at 935 ;
*88 Commercial Research, ¶ 7. Such indicators may include, for example, legislative history, the General Assembly's declaration of purpose, prior law, and the consequences of a particular construction. See § 2-4-203, C.R.S.2013; Jefferson Cnty. Bd. of Equalization, 241 P.3d at 935 ; Bd. of Cnty. Comm'rs v. Costilla Cnty. Conservancy Dist., 88 P.3d 1188, 1193 (Colo.2004).
¶ 36 Statutory language is ambiguous if it is susceptible of more than one reasonable interpretation. See A.M. v. A.C., 2013 CO 16, ¶ 8, 296 P.3d 1026 ; see also Jefferson Cnty. Bd. of Equalization, 241 P.3d at 936 ("A statute is ambiguous when it 'is capable of being understood by reasonably well-informed persons in two or more different senses.' " (quoting in part 2A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction § 45:2, at 13 (7th ed.2007) )).
¶ 37 Ordinarily, the foregoing general principles supply a sufficient framework for resolving a question of statutory interpretation. But because the statutes at issue in this case grant an immunity from suit, other principles come into play. Specifically, we must strictly construe such statutes because they are in derogation of the common law. State v. Nieto, 993 P.2d 493, 506 (Colo.2000) ; see Clyncke v. Waneka, 157 P.3d 1072, 1077 (Colo.2007) (per Bender, J., with two justices concurring and one justice concurring in the judgment; applying this principle to a statute granting limited immunity to persons involved in equine activities). And, if the General Assembly "wishes to abrogate rights that would otherwise be available under the common law, it must manifest its intent either expressly or by clear implication." Van Waters & Rogers, Inc. v. Keelan, 840 P.2d 1070, 1076 (Colo.1992) ; see Ryals v. St. Mary-Corwin Reg'l Med. Ctr., 10 P.3d 654, 661 (Colo.2000) ("A statute may modify or restrict a common law right 'only to the extent embraced by the statute, which may not be enlarged by construction, nor its application extended beyond its specific terms.' " (ultimately quoting in part Robinson v. Kerr, 144 Colo. 48, 52, 355 P.2d 117, 119-20 (1960) )); Farmers Grp., Inc. v. Williams, 805 P.2d 419, 423 (Colo.1991) (same; and citing cases for the proposition that the intent to abrogate a common law right must appear clearly, either "directly or by necessary implication" (internal quotation marks omitted)).
IV. Analysis
¶ 38 The majority errs, I believe, in giving the definition of "inherent dangers and risks of skiing" in subsection 33-44-103(3.5) an expansive reading rather than a narrow one. Avalanches are not mentioned in that definition.[2] The majority concludes that they are nevertheless included within the definition by cobbling together three categories of covered dangers and risks-"changing weather conditions," "snow conditions as they exist or may change," and "variations in steepness and terrain." Fundamentally, I believe that approach contravenes the governing principles that a statute's grant of immunity must be strictly construed, may not be expanded by construction, and must appear expressly or by clear implication.
¶ 39 It also seems to me that the General Assembly has spoken with exactitude in defining inherent dangers and risks of skiing, delineating with specificity the types of conditions and events which fall within that definition. In Vigil v. Franklin, 103 P.3d 322 (Colo.2004), the supreme court, in construing a statute limiting liability, made clear that " 'when the legislature speaks with exactitude, [a court] must construe the statute to mean that the inclusion or specification of a particular set of conditions necessarily excludes others.' " Id. at 327 (quoting Lunsford v. W. States Life Ins., 908 P.2d 79, 84 (Colo.1995) ).
¶ 40 It is not as if avalanches are unheard of occurrences in mountainous areas, or even on or near ski areas. And yet the General Assembly-despite formulating a lengthy definition identifying numerous specific conditions and events-did not expressly (or otherwise clearly) include avalanches. Given the exactitude with which the General Assembly has spoken, I do not believe it is appropriate for us to essentially add another event to the definition.
*89 ¶ 41 Even were I to agree with the majority that we may aggregate categories of conditions and events to infer inclusion of unmentioned conditions or events, I would not agree with the majority that aggregation of the three categories on which it relies unambiguously shows that avalanches are included within the statutory definition.
¶ 42 An avalanche is "a large mass of snow, ice, earth, rock, or other material in swift motion down a mountainside or over a precipice." Webster's Third New Int'l Dictionary 150 (2002). It is, therefore, an event-one that not even necessarily involves snow. Thus understood, I believe that the majority's effort to fit avalanche within the statutory definition fails on its own terms.
¶ 43 The statute includes "changing weather conditions" within the definition. Though, to be sure, a change in weather conditions may contribute to the creation of an avalanche, the fact remains that an avalanche cannot be characterized as a change in weather conditions-avalanches and changing weather conditions are qualitatively different kinds of events.
¶ 44 In including "snow conditions as they exist or may change" within the definition, the General Assembly explained what it meant by that term by following it with "such as ice, hard pack, powder, packed powder, wind pack, corn, crust, slush, cut-up snow, and machine-made snow." These examples describe types of snow by the snow's physical properties or source. An avalanche is not such a condition.
¶ 45 Nor is an avalanche a "variation[ ] in steepness or terrain." Again, the General Assembly explained that term. It includes variations "whether natural or as a result of slope design, snowmaking or grooming operations, including but not limited to roads, freestyle terrain, jumps, and catwalks or other terrain modifications." This describes conditions as encountered by a skier in the ordinary course of skiing, and in static condition. An avalanche is not such a condition.[3]
¶ 46 Further, an avalanche may not be caused by a combination of changing weather conditions, snow conditions, and variation in steepness or terrain. Other factors, such as human conduct, may contribute to the creation of such an event.
¶ 47 The majority's analysis also fails to account for the fact that the General Assembly identified particular events which would fit within the statutory definition-collisions with natural objects, impacts with man-made objects, and collisions with other skiers. The event at issue here-an avalanche-is not among them.[4]
¶ 48 In sum, I do not believe that the statutory categories of dangers and risks, considered fully, in context, and as a whole, unambiguously encompass avalanches occurring on open, designated ski trail. See Jefferson Cnty. Bd. of Equalization, 241 P.3d at 935 (the meaning of a statutory term must be determined by considering its context).
¶ 49 Because, as noted above, a grant of immunity must appear expressly or by clear implication, this conclusion arguably ends the analysis. But there is some authority to the effect that looking to legislative history is appropriate in these circumstances. See Picher v. Roman Catholic Bishop of Portland, 974 A.2d 286, 294 (Me.2009). To be on the safe side, I have considered the legislative history, as well as other indicators of legislative intent.
¶ 50 The legislative history is not enlightening. The General Assembly's declaration of purpose, however, is of some help. It provides that one of the purposes of the Ski Safety Act is to further define the legal responsibilities of ski area operators with *90 respect to "the dangers that inhere in the sport of skiing, regardless of any and all reasonable safety measures which can be employed...." § 33-44-102, C.R.S.2013. "Inhere" has been defined as "[t]o exist as a permanent, inseparable, or essential attribute or quality of a thing; to be intrinsic to something." Black's Law Dictionary 853 (9th ed.2009); see also Webster's Third New Int'l Dictionary 1163 (defining "inherent" as "structural or involved in the constitution or essential character of something: intrinsic, essential").
¶ 51 In my view, avalanches are not "intrinsic" to "the sport of skiing" on open, designated ski trails within ski areas. They stand in contrast to the conditions and events listed in subsection 33-44-103(3.5), all of which seem to me to be such as a reasonable skier would reasonably anticipate or expect.
¶ 52 Lastly, my research of similar statutes in other states turned up one revealing nugget. Statutes in several other states relating to ski area operator immunity define inherent dangers and risks of skiing in terms almost identical to those in subsection 33-44-103(3.5). See, e.g., Idaho Code Ann. § 6-1106 (2013); Mont.Code Ann. § 23-2-702(2) (2013); N.M. Stat. Ann. § 24-15-10 (2014) ; Or.Rev.Stat. § 30.970(1) (2014); Utah Code Ann. § 78B-4-402(1) (West 2013). As far as I can tell, they do not mention avalanches, with one exception-Montana's statute.
¶ 53 Mont.Code Ann. § 23-2-702(2) includes within the definition of "[i]nherent dangers and risks of skiing" all of the conditions and events included in section 33-44-103(3.5). But it adds one more-"avalanches, except on open, designated ski trails." § 22-2-702(2)(c). This tells me two things. First, Montana's legislature did not believe avalanches were covered by the other portions of the definition-including those on which the majority relies in this case. And second, the Montana legislature did not view avalanches occurring on open, designated ski trails as an inherent danger or risk of skiing.[5] Unless the Montana legislature's view is to be regarded as unreasonable as a matter of law, see A.M., ¶ 8 (a statute is ambiguous if it is susceptible of more than one reasonable interpretation), I think this indicates at the very least some ambiguity in Colorado's statute-an ambiguity which must be resolved by concluding that there is no immunity for injuries resulting from avalanches. See Van Waters & Rogers, 840 P.2d at 1076 (an abrogation of a common law right must appear expressly or by clear implication).
¶ 54 For the foregoing reasons, I respectfully dissent.

It is undisputed that the claims asserted here are those of a "skier," and that IntraWest is a "ski area operator."

Avalanches are not mentioned anywhere in the Ski Safety Act.

In this way an avalanche is distinguishable from the cornice at issue in Kumar v. Copper Mountain, Inc., 431 Fed.Appx. 736 (10th Cir.2011). A cornice is clearly a variation in steepness or terrain.

The statutes certainly cover events which occur because of a skier's encountering the conditions identified, and in that sense cover other events. See § 33-44-112 (providing immunity for claims for injuries "resulting from" those conditions). But that merely begs the question whether the skier encountered such a condition. If the condition or event was not one within the definition in subsection 33-44-103(3.5), there is no immunity. The "resulting from" language in section 33-44-112 is not an expansion of the definition in subsection 33-44-103(3.5).

This last point is further supported by the fact that, in 2007, a bill was introduced in the Montana legislature which would have (in part) deleted the language "except on open, designated ski trails" from subsection (2)(c); however, the final bill that was enacted did not make that deletion.